HILL v. GEORGIA &c. RAILROAD COMPANY.

1. RAILROADS—EVIDENCE—BILL OF LADING.—In action against a railroad company for failure to deliver a lot of cotton as per agreement, there was no error in permitting the plaintiff to introduce the bill of lading in evidence, for while it showed more fully the contract, it was not contradictory of the allegation of the complaint, and because the bill of lading had been brought before the court as an exhibit to the answer.

2. IBID.—IBID.—WAYBILL.—In such an action, the waybill, which is not a contract, was irrelevant but not incompetent testimony.

3. EVIDENCE—INTERROGATORIES.—The concluding direct interrogatory in the usual form—"if you know anything further that will benefit the plaintiff, please state the same fully"—is not leading nor objectionable on the ground that it prevents cross-examination.

4. FACTOR—ADVANCES—OWNER OF GOODS.—A factor who has advanced money equal to or exceeding the value of cotton shipped to him, does not thereby become the owner of the cotton; and, therefore, in action by the owner and shipper to recover from a railroad company the cotton so shipped, evidence as to the condition of the account between plaintiff and the factor is irrelevant.

5. RAILROADS—CONNECTING LINES—BILL OF LADING.—A railroad company is a common carrier over its own lines but not beyond its termini, unless it has become so by usage, character of business, or contract; and whether the railroad company has agreed to deliver beyond its own lines, must be determined by the bill of lading, which is the contract between the parties.

6. IBID.—IBID.—IBID.—CONDITIONS—LOSS.—A bill of lading acknowledged the receipt of cotton to be transported by the railroad receiving it, upon the condition "that in case of any loss or damage done to, or sustained by, any cotton herein receipted for during transportation, whereby any legal liability may be incurred by the terms of this contract, the company alone shall be held responsible therefor in whose actual custody the cotton may be at the time of the happening of such loss or damage;" and this bill of lading was signed by an agent "for the parties in interest separately but not jointly." *Held*, that this condition was not unlawful, and that under this contract, the initial road, having safely delivered the cotton to a connecting line, was not responsible to the owner for injury sustained by it while in the custody of the company that handled it at the delivery terminal.

7. CASE CRITICISED.—This case distinguished from Kyle v. Laurens Railroad Company, 10 Rich., 382.

8. RAILROADS—CONNECTING LINES.—It cannot be said that section 1720 of the

Revised Statutes has no application to this case, that section providing that the initial road shall be responsible for the safe transportation of the freight over its own and connecting lines, unless it produces a receipt from the company to whom it was its duty to deliver for further carriage.

9. DAMAGES.—The court having reached the conclusion that plaintiff was not entitled to recover any damages, the question as to the proper rule for the measure of damages is not involved, and whether special damages could be proved under the allegations of this complaint, and whether the damages claimed were proximate or remote, become immaterial.

Before GARY, J., Abbeville, April, 1894.

Action by R. M. Hill against the Georgia, Carolina and Northern Railway Company, commenced August 25, 1893. The judge charged the jury as follows:

This is a suit on the part of R. M. Hill, plaintiff, to recover from the defendant railroad company damages for the failure on the part of the railroad company to deliver to the consignees a certain lot of cotton delivered to the railroad company by Mr. Hill to be shipped to Charleston, and there deliver to his factors, James M. Seignous & Son. It is claimed on the part of the plaintiff that the railroad did not carry out their part of the contract, and on account of that failure certain damages resulted. It is alleged that a bill of lading was given for the cotton—that is, a receipt and a contract setting forth the conditions on which the railroad promised to do, and I will read a portion of it to you: "And it is further stipulated and agreed, that in case of any loss or damage done to or sustained by any cotton herein receipted for, during transportation, whereby any legal liability may be incurred by the terms of this contract, that the company alone shall be held responsible therefor in whose actual custody the cotton may be at the time of the happening of such loss or damage."

I charge you, as a matter of law, that under that contract it was incumbent upon the defendant company to deliver at Charleston to James M. Seignous & Son this cotton in a reasonable time, in as good condition as it was at the time that they received it; and if the cotton was not in that condition at the time that it was delivered, or ought to have been delivered, then there was a failure on the part of the railroad company,

and it is liable. Now, the next question is, was the cotton delivered in a reasonable time? If you find that it was not delivered at a reasonable time, at the time that it was delivered, then in what condition was it then? If it was not in as good condition as when the railroad company received it, then to what extent was it damaged? And, if you so find, the measure of the damages shall be as follows: If you find that the cotton was not delivered to the consignees in a reasonable time, and that in consequence the cotton has been damaged, then I charge you that the measure of damages cannot exceed the value of the cotton at the time that delivery should have been made, with interest to the time of delivery, less the value of the cotton at the time of delivery.

Now, I have been requested to charge you in behalf of the defence as follows: (2) "That in this State a common carrier may or may not take goods to be delivered beyond its own line. If it does so, it may limit liability." I so charge you. You demand a railroad company to deliver cotton at any point not on its line of road, but they have no right to refuse to take goods to deliver on its line of road. In other words, if the city of Charleston is not on its line of road, the plaintiff cannot force them to deliver it there, but they can take a contract to deliver in Charleston, and they would be bound by it. (4) "That the bill of lading is the contract between the parties, if accepted without objection by shipper, and it controls as to the liability of the common carrier." That I charge you to be the law; that the bill of lading introduced in evidence is the contract of the parties. (6) "That it was the duty of the terminal company to deliver the goods upon the presentation of the bill of lading to the consignee named in the bill, unless it appears that the shipper has assigned the bill to another party (subject to the right of stopping in transitu in cases of insolvency)." I charge you that that is the law. That was the duty of the railroad company to deliver the cotton to the consignees. But, if Mr. Hill had changed the consignees, it was the duty of the railroad company to deliver to the party named in the bill of lading. (7) "That the carrier is under no obligation to deliver the goods except upon the presenta-

tion of the bill of lading by the consignees named therein."
That I charge you as the law. (8) "That, if the bill of lading
and waybill differ in terms, the bill of lading must control."
I charge you that to be the law.

Now with reference to the liability of connecting roads. That
does not apply in a case of this kind. For instance, if it was
the desire on the part of the plaintiff to ship that cotton, he
would have a right to ship it to any point on defendant's line.
He could require defendant to deliver it to any connecting line,
and when this road took the receipt of any connecting line, that
would relieve this road of responsibility then for loss. But in
this case it is not so, for the reason that this road has contracted
to deliver this cotton in the city of Charleston, and it cannot re-
lieve itself from the obligation by saying that some other road
has not performed its contract. It is obligatory on this road to
deliver that cotton at Charleston to the consignee in as good
order as it was received here. Now you are here to hold the
scales of justice. You are simply to find the facts from the
evidence as you have heard it here, and apply those facts to
the law, which I have endeavored to give you.

*Mr. L. W. Perrin*, for appellant.

*Messrs. Graydon & Graydon*, contra.

April 2, 1895.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   This action was brought by
the plaintiff to recover damages to a lot of cotton shipped by
him over the railroad of defendant company, under a contract
to deliver the same to Seignous & Son at Charleston, as he al-
leged, a considerable portion of which was not delivered to said
Seignous & Son until after a considerable lapse of time, whereby
the cotton was greatly damaged by exposure to the weather.
There are certain undisputed facts in the case which may be
stated substantially as follows: On the 17th of October, 1891,
the cotton was received at Abbeville for shipment, and con-
signed to Seignous & Son, under a contract evidenced by a bill
of lading, a copy of which is set out in the "Case," the terms
of which will be hereinafter more particularly referred to.

Inasmuch as defendant's line of railroad does not extend to
Charleston, the arrangement seems to have been that the cotton
should be transported to Clinton over defendant's road, where
the same connected with the Columbia, Newberry and Laurens
Railroad, and thence transported by that road to Columbia,
where the last named road connected with the South Carolina
Railway, and from thence carried by said railway to Charleston.
By that route the cotton was carried to Charleston, reaching
there on or about the 20th of October, 1891, in good condition.
The South Carolina Railway Company refused to deliver the
cotton when called for by the consignees, Siegnous & Son, on
account of some discrepancy between the waybill and the bill
of lading. This discrepancy having been explained by the
defendant company as soon as it was brought to the attention
of that company, to wit: on the 5th of December, 1891, the
South Carolina Railway Company tendered the cotton to the
consignees a few days thereafter, who refused to receive the
same unless the South Carolina Railway Company would pledge
itself that all losses arising from the delay in delivering the
cotton should be paid. This the said railway company refused
to do, and the consignees declined to receive the cotton. Fi-
nally, the consignees, on the 19th of August, 1892, accepted
the cotton "under protest." In the meantime, the cotton
remained in the custody of the South Carolina Railway Com-
pany, and was suffered to lie in its yard, exposed to the wea-
ther, and, of course, when it was delivered to the consignees,
it was very considerably damaged by such exposure.

In its answer, the defendant sets up several defences: *First.*
A general denial of all the allegations in the complaint, except
such as were subsequently admitted or modified. *Second.*
That the cotton was delivered to it under a special contract,
evidenced by a bill of lading filed as an exhibit to the answer,
the terms of which will hereinafter be more particularly
stated. *Third.* That the South Carolina Railway Company
was not the agent of defendant—in no way under its control,
or accountable to it for its action in the premises, except to
account for defendant's share of through freight. On the con-
trary, the said railway company was simply one of the con-

30—43

necting lines over the route by which the cotton was to be transported. *Fourth.* That the cotton was delivered promptly to the Columbia, Newberry and Laurens Railroad Company at Clinton, the next connecting line over the route by which the cotton was to be transported to Charleston, and whatever damage was done to the cotton was done after the defendant company had delivered the same to the next connecting line, and was due to the negligence of the consignees in not presenting promptly the bill of lading which had been forwarded to them by the plaintiff, as well as to the negligence or fault of the South Carolina Railway Company in not promptly delivering the cotton to the consignees, and, on the contrary, permitting the cotton to remain in its yard for a length of time exposed to the weather. *Fifth.* That said Seignous & Son having accepted and paid drafts to an amount equal to or exceeding the value of the cotton, drawn on them by the plaintiff, with the understanding that the proceeds of the sale of the cotton should be applied to the payment of such drafts, the said Seignous & Son thereby became the owners of the cotton, and as such they and not the plaintiff were the proper parties to bring this action.

The case came on for a trial before his honor, Judge Ernest Gary, and a jury, and after the close of the testimony and argument of counsel, the jury were charged as set out in the "Case," a copy of which charge should be incorporated in the report of the case. The jury having rendered a verdict in favor of the plaintiff and judgment having been entered thereon, defendant appeals, upon numerous grounds which appear in the record, but as we do not propose to consider these grounds *seriatim*, but, following the example of both counsel for appellant, take up the several questions which they present, these grounds need not be set out here.

There are, first, several exceptions to the competency of some of the testimony, which we will now proceed to consider. 1st. As to the bill of lading. Inasmuch as the defendant had filed with its answer, as an exhibit thereto, a copy of the bill of lading, thereby making it a part of the record, it seems to us that this objection came too late. The

defendant by its own act had made that paper a part of the record, and as such it was necessarily before the court, and if the objection was ever maintainable at all, the objection came too late. Besides, the ground upon which this objection was based was that the bill of lading showed a different contract from that set out in the complaint. Now the contract, as alleged in the complaint, was to carry the cotton to Charleston and there deliver the same to the said Seignous & Son, without setting out the conditions upon which such contract was entered into, while the contract evidenced by the bill of lading was to transport the cotton to Charleston and there deliver the same to Seignous & Son, upon certain conditions specifically mentioned in the bill of lading. So that the difference was *not* in what was contracted to be done, but rather in the completeness of statement of all the conditions—one was fuller than the other. So that the case of *Dunbar* v. *Railway Company,* 36 S. C., 110, relied upon by counsel for appellant to support this objection, is not in point, for two reasons: 1st. Because in that case it does not appear as it does here, that the bill of lading was made a part of the record by the pleadings. 2d. Because in that case the contract, as alleged in the complaint, was substantially different from that evidenced by the bill of lading, for in the complaint the contract was alleged to be a contract to *"ship, transport, and carry"* the goods there in question to the point of destination; while that set forth in the bill of lading was that defendant received the goods "to be *forwarded* in accordance with the provisions, stipulations, and exceptions of the general rules and regulations and freight tariffs of the company." And the court held, upon the authorities there cited, that there was a great difference between a contract to *transport* and a contract to *forward* goods. We do not think, therefore, that there was any error in receiving the bill of lading in evidence.

2d. Was there any error in receiving the "waybill" of the defendant company in evidence? As it is well settled that the waybill constituted no evidence of the contract between the shipper and the carrier, but is simply a memorandum intended for the guidance of the agents and servants of

the carrier, which the shipper is not supposed to know anything about, we do not see the relevancy of this testimony to any of the issues involved; but we cannot say that the testimony was incompetent, and hence this exception cannot be sustained.

3d. The exception to the ninth interrogatory in chief, addressed to James M. Seignous, seems to be based upon two grounds: 1st. That it was leading. 2d. Because the defendant could not know what the witness would say in answer to that interrogatory, and could not, therefore, cross-examine him as to any matter referred to in his answer to such question. The interrogatory was the usual, general question with which interrogatories addressed to a witness examined by commission very generally, if not invariably, conclude, and this is the first time we have ever known of any exception being taken thereto. The form of the question—if you know anything else that will benefit the plaintiff or defendant (as the case may be) state the same fully, &c.—effectually precludes the objection that it is a leading question, for nothing could be more general, and it certainly does not suggest the answer. It does not deprive the adverse party of the right of cross-examination, for it must be assumed that the witness has been previously interrogated as to the particular points to which it is desired to direct the attention of the witness, and the general question is only designed to enable the witness to speak of matters that may have been overlooked, and according to our experience is very generally met by the sterotype answer, I know of nothing else, &c. This exception must be overruled.

4th. As to the ruling of the Circuit Judge in excluding the answers to the cross-interrogatories addressed to J. M. Seignous, numbered from 1 to 7 inclusive. We agree with the Circuit Judge that these questions were not pertinent to any of the issues in this case; and furthermore might and probably would have involved the necessity of taking an account between the plaintiff and Seignous & Son. These questions were designed to elicit from the witness a statement that the plaintiff was indebted to Seignous & Son, at the time the cotton was shipped to them, by reason of the fact that plaintiff had drawn drafts upon them to an amount equal to or exceeding

the value of the cotton, which had been accepted and paid by Seignous & Son, and that it was the express understanding, or implied from the usage and custom of their business, that the proceeds of the sale of the cotton should be applied to the payment of plaintiff's indebtedness to Seignous & Son. All this might be safely admitted, and yet we do not see how such testimony could be pertinent to the issues in this objection. Its purpose, doubtless, was, as indicated by the defendant's fifth defence, to show that Seignous & Son were the real owners of the cotton, and as such, the proper parties to bring this action. It seems to us that it would be a dangerous doctrine for factors especially, to hold that because a factor accepts and pays drafts drawn on him by one of his customers to an amount equal to or exceeding the value of a shipment of cotton, he thereby becomes the owner of such cotton; for if the cotton should be lost before it reaches the factor, such loss, under such view, would fall on him, and that never was and cannot be the law. The most that can be said is, that he may have *a lien* on the cotton, but not a title to it.

We will next proceed to consider whether there was any error in the judge's charge or in refusing any of the requests to charge. For this purpose it will be necessary to lay down certain general propositions, which we think are well settled by authority. In *Piedmont Manufacturing Co.* v. *C. & G. Railroad Co.*, 19 S. C., 353, it was held that a company chartered and organized for railroad transportation is a common carrier over its own line, but it is not so beyond its *termini* and over connecting lines, unless it has become so by usage, character of business, or contract; and the duty or obligation to convey goods beyond its own line of road, and deliver them at a point beyond its own line, is not imposed by law, but depends upon the contract between the shipper and the company. It was further held in that case that the bill of lading is the contract between the shipper and the company, by which the company agrees to transport and deliver beyond its own line, and the terms and conditions of the contract regulate and determine the duties and obligations of the contracting parties. These principles are fully recognized by the

highest authority. See *Insurance Company* v. *Railroad Company*, 104 U. S., at page 157, where Mr. Justice Harlan, in delivering the opinion of the court, after saying that this rule had received the sanction of the Supreme Court of the United States and adopted in most of the courts of this country, lays down the rule in the following terms: "that the carrier, in the absence of a special contract, express or implied, is only bound to safely carry to the end of its line and there deliver to the next carrier in the route." To the same effect see *Myrick* v. *Michigan Central Railroad Company*, 107 U. S., 102, and *North Penn. R. R. Co.* v. *Commercial Bank of Chicago*, 123 U. S., 727, where the preceding case of Myrick was expressly recognized, as well as many of the other cases cited in those cases. These doctrines have also been recently recognized by this court in *Dunbar* v. *Railway Company*, 36 S. C., 110, *supra*.

The same view seems to have received the approval of the legislature, for by section 1720 of the Revised Statutes of 1893 (formerly section 1513 of the General Statutes of 1882), it is provided as follows: "In case of the loss of, or damage to, any article or articles delivered to any railroad corporation for transportation over its own and connecting roads, the initial corporation or corporations first receiving the same shall, in every case, be liable for such loss or damage, but may discharge itself from such liability by the production of a receipt in writing for the said article or articles from the corporation to whom it was its duty to deliver such article or articles in the regular course of transportation. In which event the said connecting road or roads shall be severally so liable, but may in succession, and in like manner, discharge themselves respectively therefrom; but if any such corporation shall wilfully fail or refuse, upon reasonable demand being made to it by any party interested in the production of such receipt, to produce the same, then it shall not be entitled to claim the benefit of such exemption in any action against the said railroad corporation, to render it liable for such loss or damage." From the terms of this section it seems that the legislature recognized the law to be, that where goods are received by a railroad company for transportation over its own and connecting lines, the

initial corporation will be discharged from liability by showing that the goods had been safely delivered to the next connecting line; and the objcet, in the interest of the shipper, was to provide not only that the proof of such delivery should be in writing (a receipt), but also to require the initial corporation, upon reasonable demand, to produce such receipt, in order that the shipper might know in advance which one of the several corporations to sue—that is, which one of the several corporations was the party really in default.

The first question which we propose to consider is, what was the contract between these parties? It seems to be conceded, and properly conceded, that the bill of lading evidenced the terms of the contract. The practical inquiry, therefore, is, what is the proper construction of the terms of that paper? Was it an absolute and unconditional contract on the part of the defendant to carry the cotton to Charleston and there deliver it to Seignous & Son, as the Circuit Judge seems to have construed it to be, or was it to carry the cotton to Charleston and there deliver it to the consignees, upon certain conditions stated in the paper? If the contract was absolute and unconditional, then it is clear, under the case of *Kyle* v. *Laurens Railroad Co.*, 10 Rich., 382, the defendant would be liable; but if, on the other hand, the contract to deliver was upon conditions, one of which was that the company in whose custody the cotton was at the time the loss or damage occurred should alone be responsible for such loss or damage, then it is equally clear that the defendant would not be liable, for there is no pretense that any loss of or damage to the cotton occurred while the same was in the custody of the defendant company.

The terms of the contract as embodied in the bill of lading, or at least so much thereof as are in any way pertinent to this inquiry are as follows: "Received of R. M. Hill by the G. C. & N. Railroad Company, thirty-two bales of cotton * * * to be transported by the railroad receiving this cotton (with liberty to compress) unto James M. Seignous & Son at Charleston," upon payment of the freight specified, "and upon the following conditions," one of which is stated in the following words: "And it is further stipulated and agreed, that in case of any

loss or damage done to or sustained by any cotton herein receipted for during transportation, whereby any legal liability may be incurred by the terms of this contract, that the company alone shall be held responsible therefor in whose actual custody the cotton may be at the time of the happening of such loss or damage''—and this bill of lading is signed "S. M. Rigsbee, for the parties in interest, separately but not jointly." Now, as the defendant company was not a common carrier beyond its own line, it was entirely competent for it to annex any conditions, not unlawful in themselves, that it pleased to its contract to deliver the cotton in Charleston. For example, it might have said to plaintiff, when asked to transport his cotton, "You know my line does not extend to Charleston, and I am not bound, therefore, to transport your cotton to that point; but if you desire your cotton transported to Charleston and there delivered to your factors, Seignous & Son, I will do so, provided or upon condition that you agree that, in case of any damage to the cotton while on the route, which you know is composed of my road and the two connecting roads, the company in whose custody the cotton may be at the time the damage occurs, shall alone be responsible for such damage." This is practically what the parties agreed to, as evidenced by the terms used in the bill of lading, and under those terms the defendant company cannot be held liable for damages sustained, after the cotton had left defendant's line, and was in the actual custody of the South Carolina Railway Company, one of the connecting lines, which by the express terms of the contract was alone responsible.

This case differs widely from the case of *Kyle* v. *Laurens Railroad Co., supra;* for there the contract to deliver in Charleston was absolute and unconditional, and if the defendant company in that case found it necessary to employ other agents to carry out its own absolute and unconditional contract, it was, of course, liable for any default of its agents. The case now under consideration is much more like the case of *Piedmont Manuf'g Co.* v. *C. & G. R. Co., supra;* for there the contract, as evidenced by the bills of lading, was to deliver one of the shipments to certain designated consignees in the city of New York, and the other to certain designated consignees in

the city of Baltimore; but there, as here, the contracts were not absolute and unconditional, but contained a stipulation, practically identical with that found in the contract here under consideration, that in case of loss or damage, that company alone in whose custody the goods were at the time should be responsible, and in that case it was held that, under such a contract, the defendant could not be held liable, as it was conceded that the loss occurred after the goods had left the line of the defendant company.

The next point to be considered is, whether there was error on the part of the Circuit Judge in instructing the jury that the provisions of section 1720 of the Revised Statutes had no application to this case. If the Circuit Judge was in error in construing the contract between the parties as an absolute and unconditional contract to deliver the cotton in Charleston, as we have seen that he was, then it is a matter of little practical importance what his ruling as to the effect of the statute was; for if the contract properly construed was a conditional contract, then the defendant company would be relieved of all responsibility by the express terms of such conditions, and the statutory provision would become unnecessary for the protection of the defendant. But we are not prepared to admit that, even if the contract was absolute and unconditional, the statutory provision would have no application. The terms of the statute are very broad: "In case of the loss of, or damage to, any article or articles delivered to any railroad corporation for transportation *over its own and connecting roads*, the initial corporation or corporations first receiving the same shall, *in every case*, be liable for such loss or damage" (italics ours), but may discharge itself from such liability by the production of the receipt from the corporation to whom it was its duty to deliver the articles shipped. Now if, as we have seen, a railroad corporation cannot be regarded as a common carrier beyond its own line, and can only become so by special contract to that effect, and if, as the statute plainly declares, a railroad company to which goods are delivered for transportation over its own and connecting roads shall, *in every case*, become liable for any loss of or damage to such goods, unless it produces the receipt

of the connecting roads for such goods, we are not prepared to hold that this statute has no application to this case.

The next point made by appellant's counsel in their argument here is as to the question of damages. So far as this question relates to the measure of damages, this court has often held that no such question can arise until the plaintiff has shown himself entitled to recover some damages, which we do not think the plaintiff has done. So far as this point raises the question as to whether the allegations of the complaint are sufficient to warrant the admission of testimony of special damages, and so far as the exceptions on this point purport to raise the question as to whether the damages claimed were the remote or proximate result of the acts complained of, we think, under the views we have announced, these questions become immaterial.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.