## WILLETT v. SOUTHERN RY.

1. COMMON CARRIER—RAILROADS—FREIGHT.—THE PRESUMPTION is that the terminal carrier damaged goods delivered in bad condition, and this presumption is not affected by the act, 22 St., 822.
2. IBID.—IBID.—IBID.—IBID.—A CITY EXPRESSMAN is a common carrier, and delivery to him of freight in good condition presumes delivery to initial railroad in good condition.

Before GAGE, J., Aiken, February, 1903. Affirmed.

Action by Thomas Willett against Southern Railway Co. From Circuit order affirming magistrate judgment, defendant appeals.

*Messrs. B. L. Abney* and *Hendersons,* for appellant. *Messrs. Hendersons* cite: *Plaintiff must prove that defendant caused the damage:* Code, 1902, 2176; 58 S. C., 247; 26 S. C., 258. *Sec. 2176, Code, 1902, places liability on first carrier:* 33 S. C., 359; 43 S. C., 461. *There is no proof that party receiving goods was common carrier:* 5 Ency., 2 ed., 353; 6 Ency., 2 ed., 204, 242; 29 S. C., 277.

*Messrs. Sawyer & Owens,* contra, cite: *This case falls under the common law, which presumes the delivering carrier responsible:* 3 Ency. P. & P., 817, 820, 848. *Section 2176, Code, 1902, does not apply in case like this:* 63 S. C., 120; Hutch. on Car., secs. 761, 768; 7 Rich., 201; 58 S. C., 260.

June 30, 1902. The opinion of the Court was delivered by

Mr. Justice Woods. The plaintiff, Thomas Willett, delivered an ornamental camphor wood chest to an expressman at Port Chester, N. Y., marked, "Thomas Willett, Aiken, S. C., via Clyde Line." The chest was delivered to the plaintiff at Aiken, S. C., by the Southern Railway Company, in a damaged condition, with the crate shattered. This action to recover for the value of the chest was brought against Southern Railway Company as the last carrier having it in charge, the plaintiff alleging that the damage was so great as to make the chest valueless. No evidence was offered on either side as to where the damage was done. The plaintiff recovered judgment in a magistrate's court, which was affirmed by the Circuit Court. The defendant appeals, and its exceptions involve two inquiries.

First, where goods are delivered to the consignee by the last carrier of connecting lines, in a damaged condition, is there any presumption that they were damaged while in charge of the last carrier, or has such presumption been entirely removed and transferred to the initial carrier by section 2176 of the Civil Code, which was in force when this action was commenced, and which makes the initial carrier liable in every case for loss or damage to goods, allowing it, however, to discharge itself by the production of a written receipt from the next carrier to which it properly delivered the goods?

The general rule is, that the burden is on the carrier which delivers the goods to consignee to respond to any damage which occurs in transit, or show that it was done

while in the hands of some other carrier. This rule has never been under judicial discussion in this State, but it is supported by the great weight of authority elsewhere. 6 Cyc., 491; *Moore* v. *R. R. Co.,* 173 Mass., 335; *Laughlin* v. *Ry. Co.,* 28 Wis., 204. Hale on Bailments and Carriers thus states the rule, quoting numerous authorities in support of it: "In an action against the last carrier, if it is shown that the goods were delivered to the first carrier in good order, this condition, in the absence of a contrary showing, will be presumed to continue until the goods come into the possession of the last carrier, and that the injury occurred on that line. This is on the principle that things once proved to have existed in a certain condition are presumed to have continued in that condition until the contrary is established by evidence." We think this doctrine is supported by public policy so important as to amount to necessity. With the immense traffic and the resulting complicated business methods of modern American railroads, and the connection of these roads with one another, to impose upon the owner of property passing over connecting lines the burden of making affirmative proof that the loss occurred on a certain one of these lines, would be practically relieving of liability railroads handling freight as connecting lines; for the owner could rarely make the required proof, and when he could make it, in most instances the expense of doing so would be greater than the value of the goods. The rule works no hardship to the railroads as common carriers, because they receipt to one another, and can easily trace loss or damage.

Prior to the enactment of the statute above referred to, the initial carrier was not liable except upon actual proof of damage or loss while the goods were in its possession, unless it expressly contracted to deliver the goods at their destination. *Kyle* v. *R. R. Co.,* 10 Rich., 382; *Hill* v. *R. R. Co.,* 43 S. C., 471, 21 S. E., 337. This statute makes no reference to the liability of the last carrier, which we have seen existed before it was passed; and certainly a law imposing a similar liability on the initial carrier cannot be held by impli-

cation to relieve the last carrier of its liability. The statute was intended to further protect the public in dealing with connecting carriers, and not to remove any obligation existing at the time of its passage. After the enactment of the statute, the owner might demand satisfaction either of the initial carrier, under the statute, or of the last carrier, under the legal presumption above stated, but either could discharge itself by showing that the damage did not occur while the goods were in its charge. We do not think the act of 1895 (21 Stat., 822), which was in force when this loss occurred, affects the conclusion above stated. It provides: "That when under contract for shipment of freight or express over two or more common carriers, the responsibility of each or any of them shall cease upon delivery to the connecting line 'in good order,' and if such freight or express has been lost, damaged or destroyed, it shall be the duty of the initial, delivering or terminal road, upon notice of such loss, damage or destruction being given to it by the shippers, consignee, or their assigns, to adjust such loss or damage with the owners of said goods within forty days, and upon failure to discharge such duty within forty days after such notice, or to trace such freight or express and inform the said party so notifying when, where and by which carrier the said freight or express was lost, damaged or destroyed, within said forty days, then said carrier shall be liable for all such loss, damage or destruction in the same manner and to the same extent as if such loss, damage or destruction occurred on its lines: *Provided,* That if such initial, terminal or delivering road can prove that, by the exercise of due diligence, it has been unable to trace the line upon which such loss, damage or destruction occurred, shall thereupon be excused from liability under this act."

It was held in *Cave* v. *Ry. Co.,* 53 S. C., 496, 31 S. E., 359, that this act applies only when the shipments are made and received by the connecting carriers under a contract that the responsibility of each shall cease upon delivery to the connecting line "in good order," and that such contract must

be alleged in the complaint.   There is no allegation in the complaint in the case now under consideration that the chest was carried by the railroads under a contract of the kind mentioned in this statute.   It is manifest from the record that the Circuit Court and both parties to the cause did not regard this suit as an action brought under the statute of 1895.   Considering this the correct view, we do not think there is anything in the statute which destroys the plaintiff's right of recovery under the presumption of the liability of the last carrier, which has already been discussed.   The statute does not expressly or by implication remove the general presumption of liability which we have seen exists against the terminal carrier.   If, on the other hand, this be regarded an action under the statute of 1895, no objection was made in the pleadings or exceptions to the insufficiency, under the statute, of the allegations of the complaint or the evidence offered in support of it.

The next question is, was the expressman to whom the chest was delivered a connecting common carrier in such sense that delivery to him of the chest in good condition raises the presumption that it was delivered to the railroad at Port Chester in good condition?   It is a matter of common knowledge that when one speaks of an expressman in a city, he usually means an agent of one of the local express companies whose business is to transport goods for all persons who offer them.   Such companies are common carriers—*Piedmont Co.* v. *R. R. Co.,* 19 S. C., 365; *Jackson Works* v. *Hurlbut,* 158 N. Y., 34; and when railroad companies receive freight from one of these express companies for shipment, as in this case, just as they receive it from other railroads, we are unable to see the force of the position that it is not to be regarded as a connecting carrier.   But aside from all this, the presumption is that when the chest was received by the railroad at Port Chester, the crate was not in the shattered condition in whch it was delivered to the consignee, and the damage was probably done to the chest by the same negligence which shattered the

31—66

crate. When damaged goods are received by a consignee with the cases unbroken and with no damage disclosed by external inspection, there is no presumption that they were received by the first carrier in good condition, because the carrier is not supposed to open the cases in which the goods are concealed from view; but there is a presumption that the railroad company at Port Chester would not have received from the expressman a valuable chest to be shipped in a shattered crate. Note to *R. R. Co.* v. *Kirkwood,* 40 Am. Rep., 457; 6 Cyc., 518. We hold, therefore, that the presumption is that the chest was delivered to the railroad company at Port Chester in good condition, and the presumption that it was damaged by the last carrier stands, in the absence of any proof to the contrary.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.