### 7857

### GIBSON v. ATLANTIC COAST LINE R. R. CO.

1. DEPOSITION DE BENE ESSE.—Under the facts and circumstances surrounding the transaction, the refusal of a motion to suppress a deposition on the ground that its taking was noticed too late, is sustained.

2. CARRIER—JURISDICTION—FEDERAL STATUTE.—An action against an initial carrier for negligent delay in transporting vegetables is not required by the Carmack amendment (34 Stat.U. S. at Large, 594) to be tried in the Federal Court or before the Interstate Commerce Commission.

3. NONSUIT on ground that there was no proof of unreasonable delay in transportation nor of date of arrival held to have been properly refused.

4. WORDS AND PHRASES.—The word "received" held to have been used by the witnesses in the sense of "arrive."

5. PLEADINGS—CHARGE—CARRIER.—It is not error to refuse to instruct the jury that a railroad company is not required to notify consignee of the arrival of freight, or that a provision in the bill of lading limiting the time for filing claims for damages or loss is binding, where neither is alleged in the answer.

Before DANTZLER, J., Charleston, October term, 1909. Affirmed.

Action by C. M. Gibson against Atlantic Coast Line R. R. Co. Defendant appeals.

*Mr. W. Huger FitzSimons,* for appellant, cites: *Carmack amendment is unconstitutional:* 75 S. C. 276; 78 S. C. 42;

97 S. W. R. 786; 14 Tex. Civ. App. 39; 50 Neb. 592; 3 Wall. 107; 78 S. C. 49; 107 U. S. 102; 155 U. S. 333. *It restricts the liberty of contract:* 19 S. C. 353; 78 S. C. 49; 43 S. C. 461; 36 S. C. 110; Elliott on R. R., secs. 1433, 1435, 1438; 83 U. S. 318; 89 U. S. 129; 104 U. S. 146; 62 S. C. 414; 36 S. C. 110; 75 S. C. 324; 21 S. C. 35; 155 U. S. 333; 107 U. S. 102; 191 U. S. 477; 161 U. S. 192; 165 U. S. 578; 198 U. S. 45; 173 U. S. 556; 171 U. S. 505; 8 Wall. 342; 174 U. S. 580; 196 U. S. 194; 173 U. S. 684; 175 U. S. 211; 19 Wall. 584. *It is a deprivation of property without due process of law:* 164 U. S. 403; 9 Fed. St. Ann. 289; 18 How. 277; 100 U. S. 595; 51 F. R. 503; 9 Fed. St. Ann. 290; 147 U. S. 298; 204 U. S. 354; 200 U. S. 561; 148 U. S. 327; 135 U. S. 659; 173 U. S. 684; 208 U. S. 161. *It is not a regulation of interstate commerce:* 188 U. S. 321; 148 U. S. 336; 196 U. S. 194; 19 Wall. 534; 207 U. S. 463. *State Court cannot entertain actions under it:* 24 Fed. St. L. 382; 34 Fed. St. L. 584; 41 Neb. 467; 43 L. A. Ann. 511; 58 F. R. 858; 74 F. R. 981; 80 F. R. 79; 168 Mo. 652; 73 At. R. 754; Lewis Smith on Stat. Con., sec. 720; 73 S. W. R. 586; Whar. Con. L., sec. 4; Minor Con. L., sec. 5; 155 Mass. 176; 204 U. S. 426. *Convenience to the public will not avail:* 173 U. S. 684. *Substitution of right of action for property taken is not just compensation:* 135 U. S. 659; 54 N. Y. 132. *Constitutionality of the act has not been settled:* 63 S. E. R. 415; 207 U. S. 463; 149 F. R. 564; 155 F. R. 433; 151 F. R. 522, 608; 152 F. R. 206, 211; 158 F. R. 649; 168 F. R. 987; 212 U. S. 132. *Motion to suppress deposition should have been granted:* 82 F. R. 961; 44 F. R. 729. *Carrier's duty is to transport and unload:* 11 S. C. 158; 72 S. C. 44; 50 S. C. 129; 77 S. C. 483. *Nonsuit should have been granted because there was no evidence of a claim in writing for damages filed with terminal agent:* 19 S. C. 353; 5 S. C. 358; 71 S. C. 506; 77 S. C. 471. *Delivery in good condition to terminal carrier raises presumption of same*

*delivery to connecting carrier:* 66 S. C. 477; 79 S. C. 341; 76 S. C. 308; 77 S. C. 317; 78 S. C. 47. *Not duty of terminal carrier to notify of arrival:* 72 S. C. 44; 50 S. C. 129; 11 S. C. 158.

*Mr. W. A. Holman,* contra, cites: *The act falls within power of Congress to regulate interstate commerce:* 196 U. S. 194; 78 S. C. 54; 9 Wheat. 8.

April 15, 1911. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This action was brought against defendant as the initial or receiving carrier to recover damages for negligent delay in the delivery of nine consignments of cabbages which were shipped by plaintiff from Meggetts in this State to his factors in other States for sale. In each case, the delay was on the line of a connecting or the delivering carrier. The bill of lading provided for through transportation, but contained a stipulation that "no carrier shall be liable for loss or damage not occurring on its portion of the route," and this stipulation was properly pleaded as a defense to the action. The bill of lading contained also the following stipulation: "Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for· the delivery thereof, no carrier hereunder shall be liable in any event." This stipulation ·was not pleaded in the answer as a defense. The testimony of one of the witnesses for plaintiff was taken *de bene esse* under the statute, which requires "reasonable notice, not less than ten days" to the opposite party or his attorneys. On October 5th, 1909, plaintiff's attorneys served the proper notice for the taking of the testimony *de bene esse* of Wm. J. Blankford, in the city of Baltimore, on October 16th. On October 7th, a bar meeting was

held, and this case was set for trial on October 15th. It appears, however, that cases are rarely reached for trial on the day assigned, and this case was not reached until October 19th. Nevertheless, defendant's attorneys served notice on plaintiff's attorneys on October 8th, that they would move the Court to suppress the deposition on the ground that the notice was given too late, that is, for the taking of the testimony on the 16th to be used in a case tried on the 15th, and also on the ground that the notice was unreasonable and insufficient, because, although the case had been pending over a year, the notice was not given till the present term of the Court, when counsel for defendant was compelled to be in Court to attend to the trial of cases and could not, therefore, attend the taking of the deposition in a distant city at the time specified. The motion to suppress was overruled. The plaintiff had judgment and defendant appealed.

The plaintiff took the chances of the Blankford deposition not being in on the day the case was reached and called for trial and if it had not been in at that time, he might and probably would have been ordered to trial without it. The notice to take the deposition having been served before the case was set for trial, defendant was thereby apprised at the time it was set that it was set for the day before the time fixed for taking the deposition. If defendant desired to rely upon the deposition, it should then have objected to the setting of the case for trial at such an early date; failing to do so, it also took the chance of its being received in time. It was not made to appear to the Court that counsel for defendant were all so engaged in the work of trying cases in Court that neither of them could have appeared at the taking of the deposition; nor was it made to appear that but for their being so engaged, they or some of them would have appeared at the taking of the deposition; nor that other counsel could not have been gotten to represent them in

taking the testimony; nor has it been made to appear that defendant was prejudiced by refusing the motion. Therefore there was no error in refusing to suppress the deposition. Such matters must necessarily be left largely to the discretion of the trial Court.

We have frequently held that a stipulation in the contract of carriage, exempting a carrier from liability for loss or damage not occurring on its own line or portion of the route is valid (*Hill* v. *Ry.,* 43 S. C. 461, 21 S. E. 337; *Dunbar* v. *Ry.,* 62 S. C. 414, 40 S. E. 884), but the plaintiff relied on what is known as the Carmack amendment to the Act of Congress regulating commerce between the States (34 Stat. at L. 594) to avoid that stipulation. That amendment, passed June 30, 1906, reads as follows: "Any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. The common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company, on whose line the loss, damage or injury shall have been sustained the amount of such loss or damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." The defendant attacked the amendment on

numierous constitutional grounds, which we are spared the necessity of considering, because the Supreme Court of the United States, whose decision upon the questions involved is controlling, has sustained the constitutionality of the amendment upon all the grounds upon which it is here assailed. *Riverside Mills* v. *Atlantic Coast Line R. Co.,* decided January 3, 1911.

But it is contended that, even though the Carmack amendment be valid, the State Courts have no jurisdiction of causes of action arising under the Act of Congress to regulate commerce between the States,—that the Act expressly limits the jurisdiction of such cases to the Interstate Commerce Commission and the Federal Courts. The 8th and 9th sections of the Act are relied on as sustaining this contention. The 8th section makes carriers subject to the provisions of the Act liable for damages caused by the doing of things therein forbidden or by the omission of things therein required; and the 9th section says that any person claiming to be damaged by any carrier subject to the provisions of the act may either make complaint to the Commission, or bring suit for the damages for which such carrier may be liable under the provisions of the act in any District or Circuit Court of the United States of competent jurisdiction. A number of cases have been decided in both the State and Federal Courts as to the jurisdiction of the State Courts under these sections, and these decisions are conflicting. No decision upon the point has yet been made by the tribunal of last resort. But none of the decisions as to the limitation of jurisdiction under these two sections touch the question now under consideration. Those two sections were passed in the original act in 1887. The Carmack amendment was passed in 1906 and relates to matters not covered or contemplated by the original act. In fact, it creates no liability, but merely denies the right to the initial carrier in an interstate shipment to limit its liability by stipulation in the bill of lading to loss or damage

on its portion of the route. The damage to plaintiff was not caused by defendant's doing anything forbidden by the act or its omitting to do anything therein required, but by the negligent delay in the transportation and delivery of the plaintiff's goods. The act does not limit the jurisdiction of cases arising under the Carmack amendment to the Commerce Commission, or the Federal Courts. If it did, a strange situation would be presented. A citizen whose claim was less than $2,000 would be compelled to present it,—no matter how trifling in amount,—before the Interstate Commerce Commission or lose it, for the Federal Courts have no jurisdiction of such an amount. It cannot be supposed that Congress intended to create any such absurd consequences; nor has it done so. The point here under consideration was decided against appellant's contention as a necessary result of the reasoning found in the last paragraph of the opinion in *Riverside Mills* v. *A. C. L. R. Co., supra.* See, also, *Smeltzer* v. *St. Louis & S. F. R. Co.,* 168 Fed. 420; *So. Pac. R. Co.* v. *Crenshaw,* (Ga.), 63 S. E. 865; *Galveston etc. R. Co.* v. *F. A. Piper Co.* (Tex. Civ. App.), 115 S. W. 107.

The defendant contends that its motion for nonsuit and direction of verdict as to certain of the shipments should have been granted because it appeared from plaintiff's testimony that four days is a reasonable time for the transportation of cabbages to Boston, while it takes only two and three days to the other points, and that it appeared that all the shipments, except two, were delivered within four days or less time. It appears further from plaintiff's testimony that where the greater time for a shipment is required, the cabbages are put in ventilated or refrigerated cars, depending upon the length of time required, and that, if less time is required, the extra expense of such cars is avoided by shipping in ordinary cars. It does not appear but that the shipments requiring four days were made in ventilated or refrigerated cars.

Furthermore, it appears from the evidence that even in the ventilated or refrigerated cars, perishables like fruits and vegetables will sustain more damage by being left in a car which is standing than when left in the same car for the same length of time while it is kept moving,—the reason assigned for the difference being the greater circulation of air through the moving car. Again, plaintiff testified that vegetables were sold by comparison; that the buyers of Boston and the more distant markets did not expect to get as fresh vegetables as the people of the nearer markets, and they would readily buy vegetables which would be rejected in the nearer markets. All these were matters properly left to the consideration of the jury.

Defendant further contends that its motion for nonsuit and direction of verdict should have been granted, because there was no evidence of the date of the arrival of the shipments at destination,—the witnesses testifying merely when they were received,—the point being that they may have *arrived* in due time, but may not have been called for, or *received* by the consignees, until the time testified to by them. Without going into the testimony in detail, it shows that the witnesses used the word "received" in the sense of "arrived;" it shows, too, that the consignees had been advised of the shipments, and were on the lookout for them, and, in some instances, had made sales in advance for delivery on arrival of the shipments, and that the deliveries could not be made because the shipments did not arrive in time, and were in a damaged condition when they did arrive. The testimony shows also that the consignees of such perishable products are advised beforehand of shipments and have their agents at the depots, wharves and docks, looking out for their arrival, and that the carriers give prompt notice of arrival by telephone or otherwise. There was abundant testimony from which a reasonable inference could have been drawn that the shipments did not arrive in time, and that their delay

resulted in damage to the plaintiff.   In this connection, the allegation of error in refusing defendant's seventh request to charge, that a railroad company is not bound to notify consignees of the arrival of their goods, will be disposed of.   No such question was made by the pleadings or evidence.   Therefore the request was not relevant to the issues.   Moreover, in charging defendant's fourth and sixth requests the Court explicitly instructed the jury that the only ground upon which this action was based was that the shipments were unreasonably delayed, and that such delay caused damage to plaintiff; and that if plaintiff failed to prove such delay and resulting damage, their verdict must be for defendant.   Under these instructions, defendant could not have been prejudiced by the refusal of its seventh request—especially as there was no issue about the giving of notice.

The defendant was properly denied the advantage of the stipulation requiring notice of loss or damage to be given in thirty days, because that stipulation was not pleaded. If it had been pleaded, the plaintiff might have come to trial prepared to meet the issue either by proving that notice had been given or that the giving of it had been waived. *Sample* v. *Ins. Co.,* 42 S. C. 14; *Copeland* v. *Ins. Co.,* 43 S. C. 26, 20 S. E. 754; *Perlstine* v. *Ins. Co.,* 70 S. C. 77, 49 S. E. 4; *Heiden* v. *A. C. L.,* 84 S. C. 117, 65 S. E. 987; *Westcott* v. *Fargo,* 61 N. Y. 542, 19 Am. Rep. 300.

Affirmed.