## 8645

### ALDRICH v. SOUTHERN RAILWAY COMPANY.

1. CARRIER—FREIGHT RATES.—An error in quoting interstate rates which has been filed with the interstate commission and published should not prevent a carrier from collecting the rate fixed by the commission.

2. IBID.—IBID.—Where a carrier refuses to transport freight except for an unlawful rate, it is liable to the shipper for damages.

3. IBID.—IBID.—Loading cotton seed into cars at carrier's station into cars furnished by it at the shipper's request is sufficient to warrant the inference of tender for shipment, and the quoting by carrier of an unlawful rate is sufficient to justify the inference of a refusal to ship except upon payment of such unlawful rate.

4. IBID.—JURISDICTION.—The Court of Common Pleas has jurisdiction of an action to recover damages for overcharges for an interstate shipment.

5. DAMAGES resulting from overcharges on an interstate shipment are not special.

6. IBID.—Measure of damages in such case is not the difference between the rate quoted and the correct rate.

7. EVIDENCE.—Letter of a carrier's agent quoting an incorrect rate on an interstate shipment is competent on the issue of damages for charging an incorrect rate.

8. Ibid.—Market Value.—One knowing the market value of a commodity in a foreign market by his having been there, having sold the commodity there through others and accepting their reports of sales, may testify as to such value.

Before W. B. de Loach, special Judge, Barnwell, November, 1911. Affirmed.

Action by Alfred Aldrich against Southern Railway Company and South Carolina Railway—Carolina Division. Defendants appeal.

*Messrs. B. L. Abney* and *Harley & Best,* for appellants, cite: *Special damages cannot be recovered in this case:* 83 S. C. 501; 85 S. C. 19; 81 S. C. 536; Moore on Cor. 432; 91 S. C. 417; 75 S. C. 355; 59 S. C. 539. *No officer of the carrier can alter the rate to bind the carrier in damages:* 12 I. C. C. R. 418; 27 S. C. R. 358; 202 U. S. 242; 204 U. S. 445; 16 I. C. C. R. 479; 158 U. S. 98; 39 S. E. 144; 40 S. W. 899; 23 S. W. 1020; 43 L. R. A. 385; 50 S. W. 871; 21 S. E. 995; 5 S. W. 435; 49 S. W. 913; 63 Mo. App. 145; 209 U. S. 56; 6 I. C. C. R. 85; 4 I. C. C. R. 385; 9 I. C. C. R. 216.

*Messrs. R. C. Holman* and *W. H. Townsend,* contra, cite: *State Court has jurisdiction:* 204 U. S. 436; 223 U. S. 71; 88 S. C. 365; 130 S. W. 562; 123 Fed. 792; 15 I. C. C. R. 37; 69 S. E. 618; 216 U. S. 122. *Measure of damages:* 10 I. C. C. R. 696.

September 12, 1913. The opinion of the Court was delivered by

Mr. Justice Hydrick. For several seasons prior to 1909-10, the plaintiff had engaged in buying cotton seed and shipping them to Mexico, over the Atlantic Coast Line Railroad, for sale for planting purposes. Defendant's agent at

Barnwell solicited the business, and plaintiff told him that, if defendant would give him better rates than the Coast Line, he would ship over defendant's road.

It appears from the evidence that it is quite difficult, if not impossible in some cases, for the local railroad agents to figure out from the schedules or rates filed and published, the correct rate applicable to interstate shipments; and it is especially difficult, when the matter is complicated, as it was in this case, by the fact that the units of weight and value in the two countries are 'different, and the rate of exchange between them is variable. Hence the defendant's local agent referred the matter to the general freight agent, who testified that he was employed especially for that purpose.

On October 16, 1909, he wrote plaintiff that the rate on seed in carload lots, from Barnwell, S. C., to Torreon and Gomez Palacio, Mexico, was 90½ cents per hundred pounds. According to the schedule of rates filed with the Interstate Commerce Commission at that time, and published, the correct rate was 97½ cents per hundred pounds.

Sometime after receiving this letter, plaintiff made requisition on defendant's local agent for a number of empty cars to be loaded for shipment. On October 26 or 27, after plaintiff had loaded two cars, and was loading the third, defendant's local agent informed him that an error had been made in quoting the rate, and that it was 10 cents a hundred more than the rate quoted. That would have made the rate 100½ cents per hundred. Plaintiff told the agent that he could not use that rate, and, thereafter, he shipped the seed in the two cars, which he had already bought and paid for, to an oil mill in Columbia, S. C., and sold them at a loss. Thereafter, on October 30, but after plaintiff had sold the seed which he intended to ship to Mexico, defendant's general freight agent informed plaintiff that the correct rate was 97½ per hundred. Plaintiff would have paid the correct rate if he had been informed what it was before he had sold the seed.

This action was brought to recover damages for loss of profits on the sale of twenty-five carloads of seed contemplated and contracted for. Plaintiff testified that he paid not exceeding $24 per ton for the seed he bought, and that they were worth $37.50 per ton in Mexico. He also testified that he actually bought and paid for only the two carloads mentioned, and that the persons with whom he had contracted to buy other seed released him from liability on his contracts. He claimed damages for the loss of profits on twenty-five carloads; but the Court instructed the jury that he could recover only the damages which he actually sustained. The verdict was in his favor for $390. In view of the evidence of the plaintiff above stated, and the instruction above stated, and the amount of the verdict, we conclude that the jury awarded damages only for the loss of profits on the two carloads of seed which plaintiff actually bought and paid for and tendered to defendant for shipment.

According to the undisputed evidence, the Court ruled and instructed the jury that 97½ cents,—the rate which had been filed with and approved by the Interstate Commerce Commission and published,—was the lawful rate, and the only rate which defendant could lawfully charge or collect; that defendant was bound by law to charge and collect that rate—no more and no less—and that, if defendant refused to receive and transport the seed, except upon payment of a higher rate, it was liable to plaintiff for the resulting damages.

We think the Court was right in this ruling and instruction. No error in quoting a rate which has been filed with the commission and published will be allowed to prevent a carrier from collecting the correct rate applicable to an interstate shipment. *Gulf etc. R. Co.* v. *Hefley,* 158 U. S. 98, 39 L. ed. 910; *Texas etc. R. Co.* v. *Mugg,* 202 U. S. 242, 50 L. ed. 1011; *Texas etc. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 51 L. ed. 553. Such an error is not binding

upon either carrier or shipper, because both are presumed to know the correct rate.   *United States* v. *Miller,* 223 U. S. 599, 56 L. ed. 569; *Chicago etc. R. Co.* v. *Kirby,* 225 U. S. 155, 56 L. ed. 1038; *Adams Express Co.* v. *Croninger* (U. S.), decided January 6, 1913, advance sheets L. ed. No. 6, p. 148; *Kansas City Southern R. Co.* v. *Carl,* 227 U. S., decided March 10, 1913, 33 Sup. Ct. Rep. 397.   Nor does such an error subject a carrier to liability for damages resulting from any action taken by an intending shipper in reliance upon the quoted rate.   *Illinois Central R. Co.* v. *Henderson Elevator Co.* (U. S.), decided January 6, 1913, advance sheets L. ed. No. 6, p. 176.   In the Carl case, the Court said: "Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper.   The lawful rate is that which the carrier must exact and that which the shipper must pay.   The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid.   *Texas etc. R. Co.* v. *Mugg, supra.*   Nor is the carrier liable for damages resulting from a mistake in quoting a rate less than the full published rate.   *Illinois C. R. Co.* v. *Henderson Elevator Co.,* 226 U. S. 441, decided January 6, 1913, advance sheets L. ed. No. 6, p. 176.   Nor can a carrier legally contract with a particular shipper for an unusual service, unless he make and publish a rate for such service equally open to all.   *Chicago etc. R. Co.* v. *Kirby, supra.*" It follows, therefore, that, if plaintiff's right to recover had depended solely upon defendant's error in quoting the rate and on the action which he claims to have taken on the faith of the quoted rate, his complaint should have been dismissed.

But the allegations and the evidence involve something more,—to wit, the refusal of defendant to receive and carry the shipment, except upon the payment of an unlawful

charge.    If the fact be that defendant did so refuse, it incurred liability for the resulting damages. *Avinger* v. *S. C. R. Co.*, 29 S. C. 265, 5 A. & E. Enc. L., 2d 158.    In the Abilene case, the Supreme Court of the United States said: "Without going into detail, it may not be doubted that, at common law, where a carrier refused to receive goods offered for carriage except upon the payment of an unreasonable sum, the shipper had a right of action in damages * * *. As the right to recover, which the Court below sustained, was clearly within the principles just stated, and as it is conceded that the act to regulate commerce did not in so many words, abrogate such right, it follows that the contention that the right was taken away by the act to regulate commerce rests upon the proposition that such result was accomplished by implication.    In testing the correctness of this proposition we concede that we must be guided by the principle that repeals by implication are not favored, and indeed, *that a statute will not be construed as taking away a common law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory"* (italics added).    That case, and the others above cited, hold that the rate filed and published is presumed to be reasonable, and that no other can be lawfully exacted.

Under the circumstances detailed, the loading of the seed into cars furnished by defendant, with the intent of both parties that they were to be shipped to Mexico over defendant's road, was sufficient to warrant the inference of a tender of them for such shipment; and the quotation of an excessive rate—even though it was done under the belief that it was the lawful rate—was enough to justify the inference of a refusal to transport the seed, except upon payment of the rate quoted.    Whether, under

all the circumstances, such inferences should have been
drawn were questions of fact which were properly submitted
to the jury; and, under the charge, the verdict must be con-
strued as resolving them in plaintiff's favor, and as establish-
ing the fact that plaintiff's recovery was based upon defend-
ant's refusal to receive and transport the seed, except upon
payment of an unlawful exaction. Moreover, defendant is
concluded from contending in this Court that there was no
testimony tending to show such refusal, because that point
was not made in the Circuit Court.

We think there can be no doubt that the Circuit Court had
jurisdiction of the action. It was based on the violation of
a common law duty. In the Abilene case, after stating the
principles above quoted, the Court proceeded to show
that the remedy invoked by the shipper was so incon-
sistent with the provisions, purpose and intent of the
act to regulate commerce that, if allowed, it would prove to
be destructive of it. In construing section 22 of that act,
which says that "nothing in this act contained shall in any
way abridge or alter the remedies now existing at common
law or by statute, but the provisions of this act are in addi-
tion to such remedies," the Court said: "This clause, how-
ever, cannot in reason be construed as continuing in shippers
a common law right, the continued existence of which
would be absolutely inconsistent with the provisions of the
act. In other words, the act cannot be held to destroy itself.
The clause is concerned alone with rights recognized in or
duties imposed by the act and the manifest purpose of the
provisions in question was to make plain the intention that
any specific remedy given by the act should be regarded as
cumulative, when other appropriate common law or statu-
tory remedies existed for the redress of the particular griev-
ance or wrong dealt with in the act." In this case, not only
does the common law afford a remedy for the particular
grievance complained of, but it is entirely consistent with the
provisions of the act regulating commerce, and, therefore,

by the express terms of section 22, it was preserved to the shipper. *Gibson* v. *R. Co.,* 88 S. C. 365, 70 S. E. 1030; *Hardaway* v. *R. Co.,* 90 S. C. 475; *Missouri, P. R. Co.* v. *Larabee Flour Mills Co.,* 211 U. S. 612, 53 L. ed. 352; *Mondou* v. *New York etc. R. Co.,* 223 U. S. 1, 56 L. ed. 327; *Louisville etc. R. Co.* v. *F. W. Cook Brewing Co.,* 223 U. S. 70, 56 L. ed. 355; *Galveston etc. R. Co.* v. *Wallace,* 223 U. S. 481, 56 L. ed. 517; *Glaffin* v. *Houseman,* 93 U. S. 130, 23 L. ed. 833; *Copp* v. *L. & N. R. Co.* (43 La. Ann.      ), 12 L. R. A. 725; *Loughlin* v. *McCaulley,* 186 Pa. 517, 48 L. R. A. 33, notes.

In *Galveston etc. R. Co.* v. *Wallace, supra,* the railroad company was sued in the State Court as the "initial carrier," under the Carmack amendment, for a loss which occurred on a connecting line. Objection was made to the jurisdiction of the State Court on the ground that section 9 of the original act to regulate commerce provided that persons damaged by a *violation* of the statute "might make complaint before the commission * * * or in any District or Circuit Court of the United States." But the Court said that "damage caused by failure to deliver goods is in no way traceable to a violation of the statute, and is not, therefore, within the provisions of sections 8 and 9 of the act to regulate commerce." With regard to the matter of jurisdiction the Court also said: "Where the statute creating the right provides an exclusive remedy, to be enforced in a particular way, or before a special tribunal, the aggrieved party will be left to the remedy given by the statute which created the right. But jurisdiction is not defeated by implication. And, considering the relation between the Federal and State government, there is no presumption that Congress intended to prevent State Courts from exercising the general jurisdiction already possessed by them, and under which they had the power to hear and determine causes of action created by Federal statute."

This case does not fall within the principle of the Reid case (222 U. S. 424, 56 L. ed. 257). In that case, the State Court undertook to enforce a State statute which imposed a penalty on common carriers for refusal to receive and transport goods when tendered. At the time the goods were tendered for shipment, the carrier had not filed and published a through rate as required by the act to regulate commence, which also provided that no carrier should engage in interstate transportation until such schedule or rates were filed and published, and penalized the violation of the inhibition. It clearly appeared, therefore, that the State statute was in conflict with the Federal statute, and commanded the doing of that which the latter forbade. Necessarily the State statute was held to be void on the principle that, when Congress assumes control of any subject of interstate commerce, all conflicting State laws on the same subject are superseded. This is a necessary consequence of the supremacy of an act of Congress over the subject. For the same reason, a statute of Minnesota, which penalized interstate carriers for failure to furnish cars on demand for the initiation of interstate shipments, was held void in *Chicago etc. R. Co.* v. *Hardwick Farmers' Elevator Co.,* 226 U. S.     , decided January 6, 1913.

This case rather falls within the principle announced in *Missouri, P. R. Co.* v. *Larabee Flour Mills Co., supra,* in which the Supreme Court of Kansas was sustained in compelling a carrier by mandamus to transfer and return loaded and unloaded cars from the line of a connecting carrier to the flour mill of the shipper, on demand and payment of the customary charges therefor, although both carriers were engaged in interstate commerce, and three-fifths of the output of the mill was shipped out of the State. The Court held that the State Court had jurisdiction to compel the performance of the duty, which was a common law duty, in the absence of regulation of the same subject by congressional authority. There is nothing in the act to regulate commerce

which exempts a common carrier of interstate commerce from the common law liability for damages for refusing to receive and transport a shipment properly tendered, and there is nothing in the action of the State Court enforcing that liability which conflicts with any provision of that act. Therefore, under the authorities above cited, and the cases following, there was no error in overruling the objection to the jurisdiction of the Court. *Reid* v. *Colorado,* 187 U. S. 137, 47 L. ed. 108, 23 Sup. Ct. Rep. 92; *Missouri, K. & T. R. Co.* v. *Haber,* 169 U. S. 613, 42 L. ed. 878, 18 Sup. Ct. Rep. 488.

Under the view which we have taken of the case, the objection that plaintiff could not recover damages because there was no notice to defendant of the number of cars that he intended to ship and of the amount of the damages he would sustain as the result of defendant's delict (it being contended by defendant that the damages sued for are special damages), need not be considered, because we have seen that, under plaintiff's testimony and the Judge's charge, which we are bound to assume the jury obeyed, no damages could have been allowed, except for the loss of profits on the two carloads of seed which plaintiff had bought and paid for, and the amount of the verdict shows that none other were awarded. And as to those two cars, defendant certainly had notice of the circumstances and the purpose of the shipment. We must not be understood, however, as conceding, by these remarks, that the damages recovered were, in fact, special damages, or that it would have been necessary to the recovery of such damages that the carrier should have had notice of the number of cars intended to be shipped or of the amount of the damages which would result from any delict on its part with regard to the shipment.

Defendant's contention that the measure of damages was only the difference between the correct rate and the quoted rate cannot be sustained. 5 A. &

E. Enc. L., 2d. 388; *Hope Cotton Oil Co.* v. *Texas & R. R. Co.,* 10, 10 I. C. C. Reports 696.

In view of the fact that the correct rate was proved by undisputed evidence and the jury were correctly instructed what it was, we cannot see how defendant could have been prejudiced by the admission of the letters of the general freight agent to plaintiff, quoting an incorrect rate. We do not concede, however, that the letters were improperly admitted. We think they were competent. The fact that the certificate of the secretary of the Interstate Commerce Commission is made *prima facie* evidence of the correctness of the rates certified implies that the rate may be proved in some other manner and by some other evidence.

There was no error in allowing the plaintiff to testify as to the market value of seed in Mexico. He testified that he knew what the market value was—and, as a basis of his knowledge, said that he had been to Mexico, and had also sold seed there through others and had received and accepted the report of sales made by them, which was a fundamental and practical test of the market value. 16 Cyc. 1143.

Judgment affirmed.