J. ERISMAN, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

CARRIERS: Carriage of Goods—Interstate Commerce—Limiting
1  Liability—Reasonableness. The condition in an interstate bill of lading that claims for loss of or damages to the shipment shall be made in *writing* to the initial or delivering carrier *within four months* after the delivery or apparent loss, is reasonable and binding, and the exclusion of such condition is reversible error.

CARRIERS: Carriage of Goods—Interstate Commerce—Carmack
2  Amendment—Non-Exemption of Connecting or Terminal Carrier. The Carmack Amendment to the Hepburn Interstate Commerce Act does not relieve a connecting or terminal carrier from liability on interstate shipments for loss or damage caused by such carrier, even though such amendment does grant the shipper a right of action against the initial carrier for *all* loss or damage, irrespective of the line on which the same may have occurred.

CARRIERS: Carriers of Goods—Interstate Bill of Lading. The
3  *"remedy or right of action"* which is reserved to the holder of an interstate commerce bill of lading, by the Carmack Amendment to the Interstate Commerce Act, in addition to the grant of a right of action against the initial carrier, is measured by the general common law *as declared by the Federal courts*, and not by the diverse statutes and public policies of the several states.

**CARRIERS:** Carriage of Goods—Receipt in Good and Delivery in
4  Bad Condition—Carmack Amendment—Presumption. The Car-
mack Amendment to the Interstate Commerce Act has in no
wise abrogated the rebuttable rule of the common law that,
when goods are received by the initial carrier in good condition
and delivered by the terminal carrier in bad condition, it will,
in an action against the terminal carrier, on an interstate ship-
ment, be presumed that the damage was caused by such ter-
minal carrier.

WEAVER and SALINGER, JJ., dissent.

*Appeal from Wayne District Court.*—THOS. L. MAXWELL,
Judge.

TUESDAY, JUNE 26, 1917.

ACTION to recover damages to goods shipped by plain
tiff from Osceola, Nebraska, to Corydon, Iowa, over the
Union Pacific and the Chicago, Burlington & Quincy Rail-
roads, the former being the initial carrier. The case was
originally brought in justice court, and, upon a trial there,
judgment was rendered for plaintiff in the sum of $19.25.
Defendant sued out a writ of error to the district court and
was there heard on said writ, resulting in a dismissal of
the writ. The case comes here on appeal from this ruling.
—*Reversed.*

*Palmer Trimble* and *Miles & Steele,* for appellant.

*K. E. Sallman,* for appellee.

PER CURIAM.—I.  Defendant's answer
1. CARRIERS: car- in justice court consisted of a general de-
riage of goods:
interstate com- nial and some affirmative pleas in defense,
merce: limiting
liability: rea- to wit, that plaintiff at no time before
sonableness.
bringing suit made any demand on defend-
ant for the payment of damages, and that he did not,
within four months after the delivery of the merchandise,
make any claim in writing to the defendant for said dam-
ages, and did not at any time make any such claim in writ-

ing to the Union Pacific Railroad Company at Osceola, Nebraska. Plaintiff showed that the goods were in good condition when delivered to the Union Pacific Railroad Company at Osceola, and in damaged condition when he received them from defendant at Corydon, Iowa, and the amount of his damages. He also said that, at the suggestion of defendant's agent, he made out a statement of his claim and handed it to the agent. Defendant then offered the bill of lading issued by the Union Pacific Railroad Company, and also certain parts thereof; among others, a condition that all claims for loss, damage or delay to goods must be made in writing to the carrier at point of origin or at point of delivery within four months after the delivery of the property. The bill of lading was received in evidence, but the condition quoted was rejected. It then moved for judgment, and its motion was overruled, and thereupon, judgment was rendered for plaintiff in the amount hitherto stated. The writ of error challenges the correctness of these rulings, and also claims that the judgment was unwarranted, because there was no proof that the goods were damaged while in the possession of the defendant.

We are agreed that the trial court was in error in denying defendant's offer of the condition contained in the bill of lading as to when claims for damages should be presented, and are of further opinion that, while perhaps plaintiff's testimony that he made out a statement of his claim and handed it to defendant's agent at Corydon was proper, yet it was insufficient, in and of itself, to show the nature of the claim, which was in writing, and which was not shown to have been lost or destroyed.

II. The condition embodied in this bill of lading was reasonable and binding on the plaintiff, although made by the initial carrier, and, in order to recover, he must show by competent evidence, not only that he delivered the statement, but the terms of the statement itself. The latter

he could not do by parol testimony. *Stevens v. St. Louis S. W. R. Co.,* (Tex.) 178 S. W. 810; *Missouri, K. & T. R. Co. v. Harriman Bros.,* 33 Sup. Ct. Rep. 397; *Southern Express Co. v. Caldwell,* 21 Wall. 264 (22 L. Ed. 556) ; *Bailey v. Missouri Pac. R. Co.,* (Mo.) 171 S. W. 44. The decision below must be reversed for these reasons.

2. CARRIERS: carriage of goods: interstate commerce: Carmack Amendment: non-exemption of connecting or terminal carrier.

There are, however, some other questions in the case which are much more troublesome, and upon which we are not entirely agreed. While defendant's counsel make no claim that a terminal or connecting carrier may not be liable for loss or damage to goods while in its possession, some doubt has arisen in the minds of some of the members of the court as to whether or not there is or can be any such liability, and also as to the nature of the proof to establish such liability.

It is conceded, or at least should be, that, before the enactment of what is known as the "Carmack Amendment" to the Hepburn bill (34 Stat. at L. 593, Ch. 3591; Comp. Stat. 1913, Sec. 8592), the terminal carrier was liable, and that all the consignee need do was to show that the goods, when delivered by him to the initial carrier, were in good condition, and, when surrendered to him by the terminal carrier, were in a damaged condition, casting the burden upon the defendant of showing non-liability.

The material parts of this Carmack Amendment read as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass,

and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

Did the so-called Carmack Amendment change either of these rules? First, then, as to the rule of liability of any save the initial carrier. That it was not the intention of Congress to change the rule as to the liability of a terminal carrier, or a connecting one, and that it in fact did not do so, has already been settled by many decisions, including those of the Supreme Court of the United States, some of them announced before this appeal was taken. See, among others, the following cases: *Cincinnati, N. O. & T. P. Ry. Co. v. Rankin,* 36 Sup. Ct. Rep. 555; *Georgia, F. & A. R. Co. v. Blish Milling Co.,* 36 Sup. Ct. Rep. 541; *St. Louis S. W. R. Co. of Texas v. Ray,* (Tex.) 127 S. W. 281; *Kansas City S. R. Co. v. Carl,* (Ark.) 121 S. W. 932; *Bichlmeier v. Minneapolis, St. P. & S. S. M. R. Co.,* (Wis.) 150 N. W. 508; *Eastover M. & H. Co. v. Atlantic C. L. R. Co.,* (S. C.) 83 S. E. 599; *St. Louis & S. F. R. Co. v. Mounts,* (Okla.) 144 Pac. 1036; *Atchison, T. & S. F. R. Co. v. Boyce,* (Tex.) 171 S. W. 1095; *Chicago, R. I. & P. R. Co. v. Harrington.* (Okla.) 143 Pac. 325; *Glassman v. Chicago, R. I. & P. R. Co.,* 166 Iowa 254.

The rule is announced in the following language by

the Supreme Court of the United States in *Rankin's* case, supra:

"Counsel concede liability of a common carrier under the long-recognized common-law rule not only for negligence, but also as an insurer, and that, unless the Carmack Amendment * * * has changed this rule, the railway is responsible for damages not exceeding specified value. But they insist that in *Adams Exp. Co. v. Croninger*, 226 U. S. 491 (57 L. Ed. 314, 44 L. R. A. [N. S.] 257, 33 Sup. Ct. Rep. 148), we held this amendment restricts a carrier's liability to loss 'caused by it.' And, consequently, they say, the trial court erred when it charged: 'In this case the carrier is held to the highest degree of care for the safe transportation of the animals.' Construing the Carmack Amendment, we said, through Mr. Justice Lurton in the case cited (pp. 506, 507): 'The liability thus imposed is limited to "any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered;" and plainly implies a liability for some default in its common-law duty as a common carrier.' Properly understood, neither this nor any other of our opinions holds that this amendment has changed the common-law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line."

Again, in the *Blish Milling* case, supra, that court said:

"There are only two questions presented here, and these are thus set forth in the brief of the plaintiff in error: '1st. That the plaintiff's exclusive remedy was against the initial carrier, the Baltimore & Ohio Southwestern Railroad Company, under the Carmack Amendment of Sec. 20 of the Hepburn bill (34 Stat. at L. 593, Chap. 3591, Comp. Stat. 1913, Sec. 8592). 2d. That, under the stipulation in the bill of lading providing for the filing of claims for loss or damage, the action was barred.' The first conten-

tion is met by repeated decisions of this court. The connecting carrier is not relieved from liability by the Carmack Amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment, so far as it is valid under the act.' *Kansas City Southern R. Co. v. Carl*, 227 U. S. 639, 648 (57 L. Ed. 683, 686; 33 Sup. Ct. Rep. 391). See *Adams Express Co. v. Croninger*, 226 U. S. 491, 507, 508 (57 L. Ed. 314, 320, 321, 44 L. R. A. [N. S.] 257, 33 Sup. Ct. Rep. 148) ; *Cleveland, C., C. & St. L. R. Co. v. Dettlebach*, 239 U. S. 588, 591, 36 Sup. Ct. Rep. 177; *Southern R. Co. v. Prescott*, 240 U. S. 632, 637, 36 Sup. Ct. Rep. 469, *Northern P. R. Co. v. Wall*, decided April 24th, 1916 (241 U. S. 87, 36 Sup. Ct. Rep. 493)."

It will be noticed that this act does not, either expressly or by implication, exempt the terminal or any other carrier from liability. Indeed, the contrary appears. In the first place, the amendment reserves to the holder of a bill of lading any remedy or right of action which he has under existing law; and second, the carrier on whose line the loss occurs is expressly made liable to the initial carrier for any damages it may have been required to pay to the owner of the property. Surely, the remedy of the owner against the terminal carrier for loss or damage to his property while in its possession has not been taken away by this Carmack Amendment. It can hardly be conceded that Congress intended to take away from owners of goods shipped into this state the right to sue a terminal carrier for damages done while in transit, and to provide him a

remedy only against the initial carrier, which may be a line of road operating in some remote state. If this was the intent of Congress, the act itself is a delusion and a snare.

The object of the act was to settle the law applicable to interstate commerce, which theretofore had been in considerable confusion, as to the liability of the initial carrier in the shipment of goods in interstate commerce, and to make it responsible for the acts of all connecting carriers (thus making these connecting carriers its agents); and also to provide a statutory rule permitting recovery by the initial carrier of the amount of the loss or damage, from the company on whose line the loss, damage, or injury was sustained. The statute was aimed at initial carriers, and was not intended to apply to connecting or terminal ones save as it made them responsible to initial carriers for damages occurring on their own lines. No cases have been cited which hold that there is no remedy against a connecting or terminal carrier, and we do not think any can be found. The cases cited clearly settle the liability of terminal carriers.

III. What is the basis of liability of a terminal or connecting carrier? Is it a state statute, or a rule of common law recognized and enforced by all courts, both state and national? While there may be no national Federal common law as such, yet Federal courts recognize the common law of the several states, and in some instances undertake to declare it for themselves, even to the extent of saying that a state court has misinterpreted it; and reversals are not uncommon because the state court did not correctly decide the common-law rule. The liability of a carrier, in the absence of statute, is that given by the common law, and, if the statute be merely declaratory of the common law, it is recognized and enforced by all courts as

3. CARRIERS: carriers of goods: interstate bill of lading.

such. So that the liability of connecting and terminal carriers, except in the instances named in the Carmack Amendment, is given by the common law, and that law has always been recognized and enforced by the Federal courts, and is in harmony with the common law of the several states. See *New Jersey Steam Nav. Co. v. Merchants' Bank*, 6 How. (U. S.) 343, 345 (12 L. Ed. 465); Hutchinson on Carriers (3d Ed.), Vol. 1, Sec. 236, and cases cited; 4 Ruling Case Law, 947; *Beard & Sons v. Illinois Cent. R. Co.*, 79 Iowa 518; also *Smith v. State of Alabama*, 124 U. S. 465 (8 Sup. Ct. Rep. 564); *Western Union Tel. Co. v. Call Pub. Co.*, 181 U. S. 92 (21 Sup. Ct. Rep. 561). But for the adoption of the Carmack Amendment, it would not be contended that an action to enforce liability against a terminal carrier would not lie, even were there no statute or state decision upon the subject.

This liability is not founded upon a local statute, nor is it in any manner dependent thereon. It exists because of the duty resting upon a common carrier, a duty enforced by all the courts of the country, the same as any other common-law obligation. The Carmack Amendment expressly provides that nothing therein shall deprive any holder of a receipt or bill of lading of any remedy or right of action he may have under existing law. What is meant by this exception? Surely, some rights under existing laws are saved to the shipper, and, even if it be held that it refers to Federal laws, the rule of liability of a terminal carrier has been recognized and enforced by the Federal courts as a part of the general law of the land. If this be not true, then it is pertinent to inquire what rights under existing laws were preserved by the exception found in the Carmack Amendment. There was and is no Federal statutory law upon the subject, save as it may have been enacted by this Carmack Amendment; and, as the Federal Supreme Court has expressly held that the obligations of

connecting and terminal carriers are not affected by this act, save as it makes them expressly liable in some instances to the initial carriers, then, according to well-known rules of construction, Congress must have been content with the rules applied and enforced by the state courts on the subject of this liability, for it did not attempt to make any change therein. Speaking to this point, Chief Justice White, in *Texas & P. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 437 (27 Sup. Ct. Rep. 354, 51 L. Ed. 553, 557), said:

"A statute will not be construed as taking away a common-law right existing at the date of its enactment, unless that result is imperatively required; that is to say, unless it be found that the pre-existing right is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy; in other words, render its provisions nugatory."

See, as further supporting these views, *Kansas City So. R. Co. v. Carl*, 227 U. S. 639 (33 Sup. Ct. Rep. 391); *St. Louis S. W. R. Co. of Texas v. Ray*, 127 S. W. 281; *Atchison, T. & S. F. R. Co. v. Word*, (Tex.) 159 S. W. 375; *Missouri, K. & T. R. Co. v. Ward*, (Tex.) 169 S. W. 1035.

The only effect of the Carmack Amendment, as applied to connecting or terminal carriers, is to give them the benefit of all lawful conditions or provisions in the contract made by the shipper with the initial carrier. This is the effect of all the decisions so far made by the Supreme Court of the United States. It is said, however, that these suggestions run counter to the rules announced in *Adams Exp. Co. v. Croninger*, 226 U. S. 504 (33 Sup. Ct. Rep. 148). As we read that case, it is in line with our own conclusions. We quote the following from that case:

"Prior to that (Carmack) amendment the rule of carrier's liability, for an interstate shipment of property, as enforced in both Federal and state courts, was either that

of the general common law as declared by this court and enforced in the Federal courts throughout the United States (*Hart v. Pennsylvania R. Co.*, 112 U. S. 331, 5 Sup. Ct. Rep. 151, 28 L. Ed. 717), or that determined by the supposed public policy of a particular state (*Pennsylvania R. Co. v. Hughes*, 191 U. S. 477, 24 Sup. Ct. Rep. 132, 48 L. Ed. 268), or that prescribed by statute law of a particular state (*Chicago, M. & St. P. R. Co. v. Solan*, 169 U. S. 133, 18 Sup. Ct. Rep. 289, 42 L. Ed. 688)."

The author of that opinion, in referring to the proviso found in the Carmack Amendment, held that the words "existing law" meant the general common law as declared by that court, and not the supposed public policy of a particular state, or that prescribed by statute law of a particular state. He said:

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would * * * destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

Again, in *Boston & M. R. Co. v. Hooker*, 233 U. S. 97 (34 Sup. Ct. Rep. 526), the court said:

"The subject of interstate transportation of property has been regulated by Federal law to the exclusion of the power of the states to control in such respect by their own policy or legislation. * * * That by the Carmack Amendment the subject matter of the liability of railroads

under bills of lading issued for interstate freight is placed under Federal regulation so as to supersede the local law and policy of the several states, whether evidenced by judicial decision, by statute, or by state constitution. * * * That in matters not covered by its own express terms it had the effect of establishing the common-law rules respecting the carrier's liability, as laid down in the previous decisions of this court, and adopted generally by the Federal courts."

To the same effect, see *Kansas City So. R. Co. v. Carl,* 33 Sup. Ct. Rep. 391; *Missouri, K. & T. R. Co. of Tex. v. Harris,* 34 Sup. Ct. Rep. 790. Coming down to the later cases already referred to, wherein it is expressly held that, since the enactment of the Carmack Amendment, an action will lie against a connecting or terminal carrier, or that all may be sued jointly, as pointed out in *Rankin's* case and the *Blish Milling* case, supra, it is manifest that the liability of a connecting or terminal carrier is not founded on state statutes, or on the public policy of any particular jurisdiction, but upon the general common law, as declared by the United States Supreme and other Federal courts throughout the Union. See, also, *Cleveland, C., C. & St. Louis R. Co. v. Dettlebach,* 36 Sup. Ct. Rep. 177.

As the defendant's liability is predi-
**4. CARRIERS: carriage of goods: receipt in good and delivery in bad condition: Carmack Amendment: presumption.** cated not upon a state statute or the public policy of a state, but upon the general common law as applied by the Federal courts, we have next to inquire whether or not the Carmack Amendment abrogates the general rule that all a shipper need do in the first instance, in an action against a terminal carrier, is to prove that the goods were in good condition when delivered by him to the initial carrier, and in a broken or damaged condition when received by him from the terminal carrier. It is well to bear in mind the exact point presented for discussion. We

have no occasion to determine what the rule may be in an action against a connecting carrier, or in an action by an initial carrier against a connecting or terminal one for subrogation under the Carmack Amendment—with these questions we have nothing to do at this time.   The main question here has already been stated.   It is plain and clear cut.   Ordinarily, it would be enough to quote the latest pronouncement of the Supreme Court of the United States upon this subject.   In *Galveston, Harrisburg & S. A. R. Co. v. Wallace*, 32 Sup. Ct. Rep. 205, that court said:

"Under the Carmack Amendment, as already construed in the *Riverside Mills* case, wherever the carrier voluntarily accepts goods for shipment to a point on another line, in another state, it is conclusively treated as having made a through contract.   It thereby elected to treat the connecting carriers as its agents, for all purposes of transportation and delivery.   This case, then, must be treated as though the point of destination was on its own line, and is to be governed by the same rules of pleading, practice, and presumption as would have applied if the shipment had been between stations in different states, but both on the company's railroad.   Thus considered, when the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents.   The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier.   The plaintiffs were not obliged both to prove their case and to disprove the existence of a defense.   The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done.   This must be so, because carriers not only have better means, but often the only means, of making such proof.   If the failure to de-

liver was due to the act of God, the public enemy, or some cause against which it might lawfully contract, it was for the carrier to bring itself within such exception. In the absence of such proof, the plaintiffs were entitled to recover, and the judgment is affirmed."

Nothing said in *Southern R. Co. v. Prescott*, 36 Sup. Ct. Rep. 469, militates against this view. There was a valid contract made by an initial carrier with the shipper, limiting the liability of the terminal carrier as a warehouseman, and it was held that this contract was binding upon the shipper, and could be relied upon by the terminal carrier. Again, it was held that, as the terminal carrier's liability was as a warehouseman only, and as the company was liable only for negligence, and not as an insurer, the owner had the burden of proving negligence, especially where the loss was shown to have been due to fire. The following quotation gives the gist of that decision:

"It was explicitly provided that in case the property was not removed within the specified time, it should be kept, subject to liability 'as warehouseman only.' The railway company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver upon proper demand, his failure to do so, without excuse, has been regarded as making a prima-facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff, having the affirmative of the issue, must go forward with the evidence. * * * In the present case, it is undisputed that the loss was due to fire which destroyed the company's warehouse with its contents, including the property in question. The fire occurred in the early morning, when the depot and warehouse were closed.

The cause of the fire did not appear, and there was nothing in the circumstances to indicate neglect on the part of the railway company."

It will thus be seen that in this case the court announced the general rule as to presumptions, but held that they did not apply, for the reasons stated. We have expressly held that all plaintiff need do under the Carmack Amendment, where the action is against a terminal carrier, is to show good condition of the goods when delivered to the initial carrier, and bad or damaged condition when received by him from the terminal carrier. See *Glassman v. Chicago, R. I. & P. R. Co.*, 166 Iowa 254; *Carr v. Chicago, R. I. & P. R. Co.*, 173 Iowa 444. The same doctrine is announced in the following cases: *Duvall v. Louisiana W. R. Co.*, (La.) 65 So. 104; *Eastover M. & H. Co. v. Atlantic Coast Line R. Co.*, 83 S. E. 599; *St. Louis & S. F. R. Co. v. Mounts*, 144 Pac. 1036; *Chicago, R. I. & P. R. Co. v. Harrington*, (Okla.) 143 Pac. 325; *Collins v. Denver & R. G. R. Co.*, (Mo.) 167 S. W. 1178; *Willett v. Southern R. Co.*, (S. C.) 45 S. E. 93; *St. Louis, S. F. & T. R. Co. v. Fenley*, (Tex.) 118 S. W. 845; *Kansas City So. R. Co. v. Carl*, (Ark.) 121 S. W. 932.

We shall not take the time or space to quote from these cases. They each and every one hold that the Carmack Amendment does not change the rule as to what a plaintiff must prove in order to recover in an action for loss or damage to goods in interstate shipment against a terminal carrier. There are no decisions to the contrary which we have been able to find. *St. Louis, B. & M. R. Co. v. Gould*, (Tex.) 165 S. W. 13, was an action against the initial carrier, and it was there held immaterial where the loss occurred, and the question here presented was in no manner involved.

In *Carlton Produce Co. v. Velasco, B. & N. R. Co.*, (Tex.) 131 S. W. 1187, the action was by an initial carrier

against a connecting one to recover damages paid by it to a shipper. The action was bottomed upon the Carmack Amendment, and it was held incumbent upon the initial carrier to show that the damage was done by the connecting carrier. It is said in that case that no presumption arose in favor of the initial carrier under the act, and that it was required to prove damages done to the goods while in the custody of the connecting carrier. It will be noticed that the action was under the Carmack Amendment, and that it was against a connecting and not a terminal carrier. *Charleston & W. C. R. Co. v. Varnville Furn. Co.,* 35 Sup. Ct. Rep. 715, was an action against a terminal carrier to recover damages to an interstate shipment of goods, and for penalty imposed by a statute for failure to pay a claim promptly. The question presented was the validity of the state statute imposing the penalty, and it was held that, as it imposed a penalty upon a terminal carrier for losses on roads in other jurisdictions, and increased its liability by a fine difficult to escape, it overlapped the Federal act (Carmack Amendment) as respects the subject grounds and extent of liability, and was therefore invalid. What was said with reference to presumptions had reference to this state of facts.

It may be well, in closing, to call attention to the presumptions arising under the Carmack Amendment in actions by a shipper against an initial carrier, leaving aside actions against a connecting carrier. In an action against an initial carrier, the question as to where or on whose line the loss occurred is entirely immaterial. All the shipper need do in the first instance, in an action against the initial carrier, is to prove that loss or damage occurred at some time during shipment. In such cases, there is no presumption as to where the loss occurred, for that is immaterial; but a presumption does arise that, wherever the damage occurred, the initial carrier is responsible, and the burden

is upon it to show that it is not liable, because the damage was due to an act of God or public enemy, or that it was caused by the act of the shipper or his agent. Or, if the action is bottomed on the negligence of any of the carriers, as, for instance, as warehousemen, the carrier must prove that the loss was due to some exempt cause, as by fire. That being shown, most courts hold that the burden of showing negligence is then on the shipper. This is one kind of presumption.

Another, which in no manner conflicts with the previous one, is the presumption which arises in an action against a terminal carrier for loss or damage to goods, as to where or on whose line the loss occurred. This latter is the one involved in this case, in addition to the further one, that there was also an additional one like unto the first, which had to be met by the terminal carrier in the event it did not affirmatively prove that the loss or damage occurred on some other line of road.

Failure to distinguish between these two kinds of presumptions is likely to cause difficulty. We have to deal, then, with the presumption as to where the loss occurred, it being conceded that the Carmack Amendment has not deprived plaintiff of his cause of action against the terminal carrier. What is this presumption? Is it a rule of public policy, or of state enactment, or is it a rule of evidence and of procedure which is in no manner mentioned in the Carmack Amendment? That it is the general rule applied by all courts, state as well as Federal, unless changed by the Carmack Amendment, is conceded. This presumption is a rule of evidence founded on logic and human experience. In due course of business, freight is safely handled and transmitted in good condition from one carrier to another until it reaches its final destination, and it is presumed that, when this freight reached the hands of the delivering carrier, it was in good condition. If it was not, then the

delivering carrier, having received the goods and having had
them since their receipt, has the better and ofttimes the
only knowledge as to the condition of the goods when re-
ceived by it, and their treatment thereafter.   The rule is
founded, as we have said, on logic, human experience, and
on administrative necessity or convenience, and we see
nothing whatever in the Carmack Amendment in conflict
therewith.   It does not conflict with any other presump-
tion created or recognized by that amendment.   As already
observed, this amendment in no manner undertakes to say,
by presumption or otherwise, where the loss actually oc-
curred.   In an action against the initial carrier, this is
entirely immaterial.   It becomes material under that act
when, and only when, the initial carrier sues a connecting
or terminal carrier for reimbursement, and, as this action
is not of that kind, we need not consider the rule in such
cases.

There are no contrary and conflicting presumptions
here, and it will be presumed that the damage was done
while the goods were in the possession of the terminal
carrier.   It is a rebuttable presumption, and, if defendant
shows that the damage occurred on another line, it is un-
der no liability.   There is, we may say parenthetically, no
presumption under the act that the actual damage occurred
while the goods were in possession of the initial carrier.
If the terminal carrier fails to show that the damage did
not occur on its line, then it has another presumption or
prima-facie case to meet, and that is to show that the dam-
age was due to some of the excepted perils, or was not of
a kind for which it should be held liable under the original
contract of shipment with the initial carrier.   Until these
presumptions are met, liability of the terminal carrier is
shown, or at least a prima-facie case is made out.   There
are no counter presumptions, and the presumption does
not conflict with any proved facts.

Our conclusion is that the Carmack Amendment has not taken away from a shipper the right to sue a terminal or connecting carrier, and that his remedy is not alone against the initial carrier; that, in an action against a terminal carrier, the rules of practice, procedure and evidence are not changed by the said Carmack Amendment, and that, while the case must be reversed on another ground, the trial court did not err in its conclusion that judgment should 'not be reversed for failure of proof.— *Reversed.*

GAYNOR, C. J., LADD, EVANS, PRESTON and STEVENS, JJ., concur.

SALINGER, J. (dissenting). The courts have indulged a presumption, made by them or by. statutes, that, where goods are received by the initial carrier in sound condition, and the last carrier delivered them damaged, the damage was done by the last carrier. The question is whether, by Section 20 of the Carmack Amendment, Congress effectively substituted a presumption that the initial carrier caused damage found at delivery by the last carrier, or otherwise effected the abrogation of said presumption against the last carrier. This must be answered by (a) determining what said "presumption" is, in order to determine whether, being what it is, Congress has power either to abrogate it or to change its application; (b) ascertaining whether, the power existing, Congress has exercised it.

This "presumption" is either (1) court or statute made, or (2) a state policy or regulation, or (3) a judicial policy. And creating, defining or giving it effect is "a rule of decision" wherewith the courts apply. the presumption of continuity, and a rule of convenience, in suits which assert that a carrier has damaged a shipment. See *Moore v. New York, N. H. & H. R. R. Co.,* (Mass.) 53 N. E. 816; *Charleston & W. C. R. Co. v. Varnville Furniture Co.,* 35 Sup. Ct.

Rep. 715; *Bailey v. Missouri Pac. R. Co.,* (Mo.) 171 S. W. 44; *American Silver Mfg. Co. v. Wabash R. Co.,* (Mo.) 156 S. W. 830, at 832; *Missouri, K. & T. R. Co. of Tex. v. Harris,* 34 Sup. Ct. Rep. 790; *Boston & M. R. Co. v. Hooker,* 34 Sup. Ct. Rep. 526; *Beard v. Illinois Cent. R. Co.* 79 Iowa 518, at 523; *Chicago, R. I. & P. R. Co. v. Harrington,* (Okla.) 143 Pac., at 328.

Can Congress change these as to interstate shipments?

Either the courts or the legislature can make trial rules. In the absence of statute, the former may make the presumption of continuity the basis of holding the last carrier liable, or may hold that same is insufficient to make it liable, or abrogate it, or substitute for it. The legislature can declare that stated things shall raise a stated presumption as to liability, and fix the burden of proof. *Hunter v. Colfax Cons. Coal Co.,* 175 Iowa 245, at 257; *South Covington & C. St. Ry. v. Finan's Admx.,* (Ky.) 155 S. W. 742, 744. It follows that it may change theretofore existing rules on presumed liability and burden of proof. *Hunter v. Coal Co.,* supra. If it may make rules on these, it may abolish or change them when made by the courts; and it is settled that rules that have been evolved by the courts may properly be abrogated by the legislature. See *Hunter's* case, supra, and *Borgnis v. Falk Co.,* (Wis.) 133 N. W. 209; *Jensen v. Southern Pac. R. Co.,* (N. Y.) 109 N. E. 600, 604; *Mondou v. New York, N. H. & H. R. Co.,* 32 Sup. Ct. Rep. 169; *State v. Creamer,* (Ohio) 97 N. E. 602, 606; *In re Opinion of Justices,* (Mass.) 96 N. E. 308, and *State v. Clausen,* (Wash.) 117 Pac. 1101. It can abolish the common-law rule with respect to the assuming of risk of injury from defective appliances (*Seaboard Air Line R. Co. v. Horton,* 34 Sup. Ct. Rep. 635, at 639), and annul the presumption of guilt theretofore arising from the finding of an indictment (*Ford v. Dilley,* 174 Iowa 243).

Within certain limits, Congress may do all that a state

legislature can, or supersede anything which a legislature has enacted. It follows that, within those limits, Congress may so deal with court-made law. Interstate commerce is within the field of such action. It has been, therefore, held that an act of Congress supersedes an Ohio statute which makes the mere proof of the existence of defects in appliances prima-facie evidence of negligence; and that the Carmack Amendment supersedes local law which puts the burden of proof to show want of negligence upon a warehouseman. *Southern R. Co. v. Prescott,* 36 Sup. Ct. Rep. 469.

It is true, but not material, that actions based on a Federal statute are "triable and tried in a state court; hence local rules of practice and procedure were applicable." *Chesapeake & O. R. Co. v. De Atley,* 36 Sup. Ct. Rep. 564, at 566, right column. This settles what may be done if Congress *does not* intervene, but has no bearing on whether it *can* intervene.

It seems clear that Congress has power to abrogate or change the presumption indulged. in against the last carrier, whether by statute or evolved by the courts.

II.   Has Congress changed these as to interstate shipments? If it has, it was done by the following statute:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of

such receipt or bill of lading of any remedy or right of action which he has under existing law." Sec. 7 of Carmack Amendment to Sec. 20 of Hepburn Act, 34 Statutes at Large, 584, c. 3591.

It is settled that the provision of this amendment, that nothing therein contained "shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law," does not preserve this presumption, because that proviso refers only to such rights and remedies as the holder may have had at the time of his action, under existing *Federal* law. *Adams Exp. Co. v. Croninger,* 33 Sup. Ct. Rep. 148; *Charleston & W. C. R. Co. v. Varnville Furniture Co.,* 35 Sup. Ct. Rep. 715; *Joseph v. Chicago, B. & Q. R. Co.,* (Mo.) 157 S. W. 837, at 838; *Southern R. Co. v. Bennett,* (Ga.) 86 S. E. 418.

2-a

In *Carlton Prod. Co. v. Velasco, B. & N. R. Co.* (Tex.) 131 S. W. 1187, at 1188, it is said:

"Presumptions indulged in by courts prior to the enactment of that act in regard to the final carrier have no bearing or effect upon cases arising under that act. Those presumptions have been effectually destroyed by the declaration that the initial carrier in interstate shipments is liable no matter on what line the damages may have occurred."

Though it is not done so expressly, the same conclusion is announced in *Charleston & W. C. R. Co. v. Varnville Furniture Co.,* 35 Sup. Ct. Rep. 715. There, the Supreme Court of South Carolina defends a statute penalty by a statement which the Supreme Court of the United States interprets "to mean no more than that there is a presumption that the carrier that fails on notice to point out some other as responsible is itself in fault." The Federal decision points out that "the defendant happened to be the last carrier of the line, and in

many states, including South Carolina, a so-called presumption has been established at common law that property starting in good condition remains so until the latest moment when it could have been harmed," and that, while this was first treated as a true presumption of fact, it became, if it was not always, à rule of substantive law, a rule of convenience calling on the last carrier to explain. It is then said that there is thus presented a case "that a carrier in interstate commerce has been held liable for a loss not shown to have happened while the goods were in its possession or within the state, or to have been caused by it, if those facts are now in any way material, on the strength of a rule of substantive law." A reversal is put on the ground that "the special regulations and policies of particular states upon the subject of the carrier's liability for loss or damage to interstate shipments  *  *'  * have been superseded." This has since been followed in South Carolina. *Spence v. Southern R. Co.,* (S. C.) 85 S. E. 1058.

In a word, the Federal Supreme Court deals with the case as one wherein the last carrier was penalized because of indulgence in a presumption of negligence created by statute, and nullifies the statute because of the Carmack Amendment.

In *Galveston, H. & S. A. R. Co. v. Wallace,* 32 Sup. Ct. Rep. 205, at 207, it is said that the initial carrier must now treat the connecting carriers as its agents for all purposes of transportation and delivery; that the whole transaction "is to be governed by the same rules of pleading, practice, and presumption as would have applied if the shipment had been between stations in different states, both on the initial carrier's railroad."

III. It is open to serious question whether anything in the language of the Carmack Amendment creates a presumption against the initial carrier. As written, it does

no more than to make him paymaster for whosoever, including himself, may have injured an interstate shipment, giving him recourse over upon proof that some other participant in the carriage did the injury. While *Carlton Prod. Co. v. Velasco, B. & N. R. Co.*, decided by the Supreme Court of Texas, 131 S. W., at 1188, construes the act to work a destruction to the presumption theretofore indulged, even that is not so much a declaration that the same presumption rules against the initial carrier that once ruled against the delivering one, as it is a holding that the last presumption has been destroyed because of the obligation placed upon the initial carrier; and so of *Charleston & W. C. R. Co. v. Varnville Furniture Co.*, 35 Sup. Ct. Rep. 715. Beyond all question, the holding of this case rules that the Carmack Amendment destroys the presumption as to the last carrier, but this is not necessarily a finding that the same presumption is now raised against the initial carrier. It, too, can rest upon the fact that what the Carmack Act places upon the initial carrier is inconsistent with allowing the presumption against the last carrier still to rule. It is authority against indulging the presumption, but perhaps not authority for a claim that the same presumption rules against the initial carrier as before the act prevailed against the delivering carrier. A closer question is made of it by *Galveston, H. & S. A. R. Co. v. Wallace*, 32 Sup. Ct. Rep., at 207, which holds that the initial carrier must now treat the connecting ones as its agents for all purposes of transportation and delivery; that the whole transaction "is to be governed by the same rules of pleading, practice and *presumption* as would have applied if the shipment had been made between stations in different states, both on the initial carrier's railroad." And see *Storm Lake T. & T. Factory v. Minneapolis & St. L. R. Co.*, 209 Fed. 895; *Collins v. Denver & R. G. R. Co.*, (Mo.) 167 S. W. 1178, at 1179. And the initial carrier has the bur-

den of proof to show that the loss resulted from 'some cause for which neither it nor any of its connecting carriers are responsible. Wherefore, its defense must or may include such proof as, before the act, the particular connecting carrier who was sued had to make. *Nashville, C. & St. L. R. Co. v. Truitt Co.,* (Ga.) 86 S. E. 421; *Gamble v. Union Pac. R. Co.,* (Ill.) 104 N. E. 666; *Brinson v. Norfolk S. R. Co.,* (N. C.) 86 S. E. 371; *Texas Midland R. Co. v. Becker,* (Tex.) 171 S. W. 1024; *St. Louis, B. & M. R. Co. v. Gould,* (Tex.) 165 S. W. 13; *Georgia, F. & A. R. Co. v. Blish Milling Co.,* 36 Sup. Ct. Rep. 541, 544; *Thomas v. Blair,* (Mich.) 151 N. W. 1041; *Coovert v. Spokane, P. & S. R. Co.,* (Wash.) 141 Pac. 324; *Kansas City & M. R. Co. v. New York Cent. & H. R. R. Co.,* (Ark.) 163 S. W. 171. It may no longer defend by urging that the last carrier is to blame. *Karr v. Baltimore & O. R. Co.,* (W. Va.) 86 S. E. 43.

IV. The history of the amendment demonstrates that, in enacting same, Congress acted under certain conceptions. It has been held that Congress acted because public policy demanded that the shipper should not be left remediless on account of the immensity of traffic and the complexity of connecting railroad business, which made his proving on what lines his loss occurred a practical impossibility, while it was easy for the carrier to locate loss or damage (*Willett v. Southern R. Co.,* [S. C.]45 S. E. 93) ; further, that Congress acted to save the injured shipper from falling between two stools and being compelled to sue over and again as in each suit he failed in proof as to the particular carrier whom he had impleaded, which created a situation where he had to accept such settlement as should be proposed; that the act was intended to facilitate remedy by locating the responsible carrier (*Atlantic C. L. R. Co. v. Riverside Mills,* 31 Sup. Ct. Rep. 164) ; that its purpose was to aid in establishing unity of responsibility (*Georgia, F.*

& A. R. Co. v. Blish Milling Co., 36 Sup. Ct. Rep., at 544) ;
that it was intended to effect that the obligation of the
carrier with respect to the services within the purview of
the statute shall be governed by uniform rule in the place
of diverse requirements of state legislation and decisions
(*Southern R. Co. v. Prescott*, 36 Sup. Ct. Rep. 469, at 472).
On the whole, it is perhaps not unreasonable to construe
the amendment into substituting the initial carrier for the
delivering carrier, so far as presuming who did the dam-
age goes. If that be a tenable interpretation, it cannot
matter that the substitution be unreasonable. Nor is it
that. While perhaps most of the states indulged in the pre-
sumption against the last carrier, at least some did not.
See *Marquette H. & O. R. Co. v. Kirkwood*, 45 Mich. 51.
And those that did were at liberty to change. Be that as
it may, the Federal legislation on the subject is paramount.
If that be so, and if Congress raised this presumption
against the initial carrier, can a presumption that the last
carrier is to blame, which presumption rests upon state
authority, exist side by side with a Federal statute declar-
ing that this presumption exists against the initial car-
rier? It would seem to be a logical impossibility to have
a presumption that, if a shipment which started in good
condition is delivered in damaged condition, the last car-
rier damaged it, and at the same time have one available in
the same case, upon the same evidence, that the initial
carrier did the damage. It is manifest that the Federal
and the state presumption are addressable to meet an iden-
tical situation. Now, in the very nature of things, there
can be no presumption which is not exclusive, in the sense
that to presume a fact at all is, of necessity, to presume no
other fact in conflict therewith. If it be presumed, for
the purpose of the law of descent and distribution, that, if
two brothers die in shipwreck, and there be no direct evi-
dence whether the deaths were or were not simultaneous,

the younger died last, can there also be a presumption that the older died last? Is not presuming that the younger lived longest as much a presumption that the older did not? Suppose a Federal statute declared that the first person found in the possession of counterfeited money be presumed to have coined it. Might a state, either by state decision or legislative enactment, declare that, upon proof that several had been in possession of such money, it should be presumed that the one last in possession was guilty of the coining?

If we assume that Congress has raised just such a presumption against the first carrier as before quite universally prevailed against the last, we should not indulge in a construction which would retain what Congress intended to cure, and, side by side with that cure, retain what Congress thought were the evils to be remedied.

### 4-a

It has been suggested that Congress intended no more than to make all participants in the carriage the agents of the initial carrier, thus making the latter responsible, without reference to which connecting carrier did the damage. I am not so clear that this was all that was intended. But assume it is all. If that be so, whether Congress intended to abrogate the presumption against the last carrier by raising it against the initial carrier, becomes quite immaterial. If the act of Congress makes the presumption against the last carrier needless, or gives it no place wherein to operate, it is quite as effectively superseded as if a different presumption had been substituted for it. It has been pointed out how, in various ways, it was the purpose of the Congress to take hold of the field and to help the complaining shipper to ease and definiteness in dealing with the remedy for his loss. Beyond all question, it was the purpose of the amendment to preserve uniformity of procedure in cases dealing with interstate shipment, to obviate confu-

786        Erisman v. Chicago, B. & Q. R. Co.   [180 Iowa

sion and uncertainty, to make the location of the one responsible, certain and easy. That the act was intended to be a means to these ends which Congress had the power to accomplish, see *Hudson v. Chicago, St. P. M. & O. R. Co.*, 226 Fed. 38; *Looney v. Oregon Short Line R. Co.*, (Ill.) 111 N. E. 509; *Croninger's* case, supra; *Hart v. Pennsylvania R. Co.*, 5 Sup. Ct. Rep. 151; *Pennsylvania R. Co. v. Hughes*, 24 Sup. Ct. Rep. 132; *Chicago, M. & St. P. R. Co. v. Solan*, 18 Sup. Ct. Rep. 289; was to aid in establishing unity of responsibility, *Georgia, F. & A. R. Co. v. Blish Milling Co.*, 36 Sup. Ct. Rep., at 544; that it was intended to effect that the obligation of the carrier with respect to the services within the purview of the statute shall be governed by uniform rule in the place of diverse requirements of state legislation and decisions, *Southern R. Co. v. Prescott*, 36 Sup. Ct. Rep. 469, at 472. Equally clear is the method by which the Federal act intended to accomplish what it conceived to be an advantage to the shipper. It makes the initial carrier the principal. Assuming that this is all it does, and it yet makes every connecting carrier the agent of that principal. The moment that is done, Congress has provided a remedy which accomplishes certainty in redress, and which makes the presumption against the last carrier utterly needless. Since Congress enables the shipper to recover, no matter which actor in the chain of transportation damaged the shipment, it, of course, made it unnecessary to prove, either by testimony or by presumption, that any particular carrier in the line did the damage. The moment Congress provided a remedy, it made it quite immaterial whether first, an intermediate or last carrier caused the damage. For that reason alone, it was intended that the former presumption against the last carrier should no longer obtain.

It was said in *Southern R. Co. v. Prescott*, 36 Sup. Ct. Rep., at 472, 473, that, where it is manifest that Congress

intended that the obligations of the carrier with respect to the service within the purview of the statute shall be governed by uniform rule in the place of diverse requirements of the state legislation and decisions, when the question arises as to responsibility under a bill of lading, the question "is none the less a Federal one because it must be resolved by the application of general principles of the common law."

On either theory, and without reference to whether Congress should or should not have done this, it has made the presumption upon which the appellee in this case prevailed no longer available to him. It may reasonably be added that, since all the cases agree, the Carmack Amendment made neither new liability nor new remedy, and, as it should be held that it sought to accomplish *something*, it was its purpose to change this rule of evidence. In my opinion, that is just what its purpose was.

V. What is opposed, *Willett v. Southern R. Co.*, (S. C.) 45 S. E. 93, *Eastover M. & H. Co. v. Atlantic C. L. R. Co.*, 83 S. E. 599, *Duvall v. Louisiana W. R. Co.*, (La.) 65 So. 104, *Chicago, R. I. & P. R. Co. v. Harrington*, (Okla.) 143 Pac., at 328, and *Glassman v. Chicago, R. I. & P. R. Co.*, 166 Iowa, at 263, make much of holdings that the Carmack Amendment does not in *terms* relieve the last carrier from his "liability," and rest themselves on a statement in *Moore v. New York, N. H. & H. R. R. Co.*, (Mass.) 53 N. E. 816, that the presumption against that carrier is not mentioned in the amendment. The answer is:

a. The Carmack Act creates neither new right, liability nor remedy. The liability of the carrier is still created by the common law (*St. Louis & S. F. R. Co. v. Heyser*, [Ark.] 130 S. W. 562, at 565; *Galveston, H. & S. A. R. Co. v. Wallace*, 32 Sup. Ct. Rep., at 206; *Storm Lake T. & T. Factory v. Minneapolis & St. L. R. Co.*, 209 Fed.

at 903); wherefore, there is no claim in this case that the act relieves the carrier from any "liability."

b. As said in *Adams Express Co. v. Croninger*, 33 Sup. Ct. Rep. 148, "though there is no reference to the effect upon state regulation, (where) it is evident that Congress intended to adopt a uniform rule and relieve such contract from. the diverse regulation to which they had been theretofore subject," such state regulation, though not referred to at all in terms, must cease.

Permission in terms is unnecessary if the power be needed to effectuate what is expressly permitted. See *Charleston & W. C. R. Co. v. Varnville Furniture Co.*, 35 Sup. Ct. Rep. 715; *Missouri, K. & T. R. Co. v. Harriman Bros.*, 33 Sup. Ct. Rep. 397; *Adams Exp. Co. v. Croninger*, 33 Sup. Ct. Rep. 148; *Chicago, B. & Q. Co. v. Miller*, 33 Sup. Ct. Rep. 155; *Lefebure v. American Exp. Co.*, 160 Iowa 54; *Bailey v. Missouri Pac. R. Co.*, (Mo.) 171 S. W. 44; *St. Louis & S. F. R. Co. v. Heyser*, (Ark.) 130 S. W., at 566 The employers' liability case declares that the test of power "is not merely the matter regulated, but whether the regulation is directly one of interstate commerce, or is embraced within the grant of power conferred on Congress to use all lawful means necessary and appropriate to the execution of the power to regulate commerce."

c. The mere fact that Congress has chosen to take possession of a field, of itself shuts out state action in all that can arise in such field; not merely oppugnancy, but that which is coincidental (*Charleston & W. C. R. Co. v. Varnville Furniture Co.*, 35 Sup. Ct. Rep. 715); and Congress *has* so taken possession of injury to or loss of interstate shipments, and of state action upon that subject. It has taken possession of the whole field, with intent to supersede all special state provisions, regulations, policies, constitutions, statutes and decisions. See *Donovan v. Wells Fargo & Co.*, (Mo.) 177 S. W. 839; *Michelson v. Judson*,

(Ill.) 109 N. E. 281; *Spada v. Pennsylvania R. Co.*, (N. J.) 92 Atl. 379; *Mitchell v. Atlantic C. L. R. Co.*, (Ga.) 84 S. E. 227; *Robinson v. Louisville & N. R. Co.*, (Ky.) 169 S. W. 831; *Bailey v. Missouri Pac. R. Co.*, (Kansas City Court of Appeals) 171 S. W. 44; *Gamble v. Union Pac. R. Co.*, (Ill.) 104 N. E. 666; *Boston & M. R. Co. v. Hooker*, 34 Sup. Ct. Rep., at 528; *Joseph v. Chicago, B. & Q. R. Co.*, 157 S. W., at 838; *Charleston & W. C. R. Co. v. Varnville Furniture Co.*, 35 Sup. Ct. Rep. 715; *Kansas City S. R. Co. v. Carl*, 33 Sup. Ct. Rep. 391, at 394; *American Silver Mfg. Co. v. Wabash R. Co.*, (Mo.) 156 S. W., at 832. As said in *Adams Exp. Co. v. Croninger*, 33 Sup. Ct. Rep. 148, almost every detail of the subject *is* covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it; that, by means of the Carmack Amendment, Congress has occupied the entire field of interstate shipments, and wholly ousted the states from control thereof.

*d.* Indirection may suffice. State rights have been saved merely because they were not included in an enumeration of what was taken. *Seaboard A. L. R. Co. v. Horton*, 34 Sup. Ct. Rep., at 639.

*Missouri, K. & T. R. Co. of Tex. v. Harris*, 34 Sup. Ct. Rep. 790, 794, is no denial of power to effectuate these incidental regulations under the amendment, but, on the contrary, concedes such power. It holds that the state has power to discourage captious delay in settlement "of small but well-founded claims" arising out of interstate shipments by providing the taxation of an attorney fee as costs, and that this is so *"until Congress does speak."*

### 5-a

In *Duvall v. Louisiana W. R. Co.*, (La.) 65 So., at 105, it is said that the court sees no inconsistency between the Carmack Amendment and this "rule of evidence;" that

"Congress was conferring a right of action; was not deal-
ing with the question of what evidence the court should
deem to be sufficient for the proof of a particular fact at
issue between the litigants;" that "the said rule of evidence
has absolutely nothing to do with the substantial rights of
the parties; that it is simply an aid to the court in weigh-
ing the evidence;" and that it is not understandable why
Congress needed to or should take away or change a salu-
tary evidence rule in order to give this added privilege.
All this states, in effect, that the act does not abrogate the
state presumption because it is not done in terms, and be-
cause such presumption is a mere rule of evidence. That
failure to express in terms is not decisive has been seen;
and, since Congress *can* abrogate or change rules of evi-
dence, the fact that the presumption in question *is* a mere
rule of evidence, is manifestly neither proof nor disproof on
whether the amendment accomplished the abrogation of
such rule.

*Chicago, R. I. & P. R. Co. v. Harrington,* (Okla.) 143
Pac., at 326, disposes of the question by the naked state-
ment that the presumption. is but a rule of evidence; by
just saying that the presumption is not abolished by the
amendment; and by citing *Duvall's* case, alone.

*St. Louis & S. F. R. Co. v. Mounts,* (Okla.) 144 Pac.
1036, is content to say that, while all state laws pertain-
ing to substantive rights connected with interstate ship-
ments have been abrogated, state law still rules in respect
to remedy and procedure in state courts. So of *Elliott v.
Chicago, M. & St. P. R. Co.,* (S. D.) 150 N. W. 777, which,
in addition, had to decide and did decide nothing but the
here immaterial proposition that both the initial and the
connecting carrier may be sued. *Georgia, F. & A. R. Co.
v. Blish Milling Co.,* 36 Sup. Ct. Rep., at 543; *Bichlmeier
v. Minneapolis, etc. R. Co.,* (Wis.) 150 N. W. 508; *Kan-
sas City S. R. Co. v. Carl,* (Ark.) 121 S. W. 932; *Duvall's*

case, supra; and *Eastover M. & H. Co. v. Atlantic C. L. R. Co.,* (S. C.) 83 S. E. 599, join.   Manifestly, the mere fact that the last carrier may still be sued does not prove that a certain presumption is available against him in the suit.

The *Eastover* case argues further that presumption often takes the place of proof in logical inquiry as to who is liable, because "the last man who handles a package is presumed to have damaged it if it be damaged; for, if he did not damage it, he, above all others, knows it." This may be a first-rate statement of why the presumption existed prior to the Carmack Amendment, but it does not seem to be in any way addressed to the question whether such presumption, no matter how logical its entertaining may in itself be, has room to operate since the Carmack Act raises that presumption against the initial carrier. The case concludes with the naked statement:

"In our opinion, the Carmack Amendment has not qualified the law as declared in *Willett.v. Railway,* 45 S. E. 93. * * * The cases cited by appellant from the Supreme Court of the nation do not at all militate against the conclusions to which we have come; they rather sustain them."

*Kansas City S. R. Co. v. Carl,* (Ark.) 121 S. W. 932, recognizes that there is a Carmack Act, to the extent of holding that the same makes invalid all contracts to limit the initial carrier's liability for loss of freight. Upon this it holds that, therefore, an initial carrier cannot contract to limit the liability of the defendant in the case, a connecting carrier. It also adheres to the presumption against the last carrier. It does not, however, indulge in any disposition or even discussion of the question whether the amendment has abrogated the presumption which the decision affirms.

5-b.

We have said in *Glassman v. Railway,* 166 Iowa, at

261, that the Carmack Act has made no change in regard to the point in consideration here. I have to say that, if the language used in *Glassman's* case were *decision,* and if it be assumed that the decision is right, it still must yield if it be clear that the Supreme Court of the United States has decided or will decide otherwise. But, in my opinion, all that was said in the case on this point is *dictum.* It is absolutely undeniable that it involves a dispute limited to whether *direct* evidence established that defendant caused the damage, or, on the other hand, that someone else was to blame. It seems well settled in principle that there is no room for such presumption as is here under consideration, where direct evidence is even obtainable, to say nothing of when such evidence is actually produced; and, if the presumption is not in the case, then, though it be conceded that in a proper case Federal law had not affected the presumption, all said in *Glassman's* case on the effect of such Federal legislation was purely moot.

The inference or presumption based on the instinct of self-preservation and the love of life is never indulged in if there is, or is obtainable, direct evidence on the conduct of the injured person, or the circumstances of the injury. *Dunlavy v. Chicago, R. I. & P. R. Co.,* 66 Iowa 435; *Whitsett v. Chicago, R. I. & P. R. Co.,* 67 Iowa 150; *Reynolds v. City,* 72 Iowa 371; *Hopkinson v. Knapp,* 92 Iowa 328; *Salyers v. Monroe,* 104 Iowa 74, 77; *Ellis v. Leonard,* 107 Iowa 487; *Morbey v. Chicago & N. W. R. Co.,* 116 Iowa 84; *Burk v. Walsh,* 118 Iowa 397; *Ames v. Waterloo & C. F. R. T. Co.,* 120 Iowa 640; *Phinney v. Illinois Cent. R. Co.,* 122 Iowa 488; *Golinvaux v. Burlington, C. R. & N. R. Co.,* 125 Iowa 652. The bottom reasoning is that, if this presumption be not permitted, a failure of justice may result. It follows that, if there be direct evidence, or it be obtainable, this reason for the rule fails, and that, if there be direct evidence, all that is said on whether

something has affected the presumption need not and should not be said.

The basis for indulging the presumption that a particular carrier caused damage is that, without it, it would be exceedingly difficult for the claimant to prove his case against the carrier he had elected to sue. When he has or can obtain direct evidence of what, without, must be supplied by presumption, he has no suit in which it is proper to declare the status of such presumption. This is emphasized by the fact that the inference for the instinct of self-preservation does not present a case of the presumption on one side and counter-proof on the other, but a case wherein a presumption never becomes active if direct evidence be obtainable. "Direct evidence of what took place is of higher character than the mere inference to be drawn from the instinct of self-preservation." (*Bell v. Incorporated Town of Clarion,* 113 Iowa 126), and it has been held that, where there are no facts shown indicating either accident or mistake, and facts are shown pointing strongly to suicide, "the presumption against suicide ceases to control." *Prudential Ins. Co. v. Dolan,* (Ind.) 91 N. E., 970, at 971, left column.

"Presumptions are indulged to supply the place of facts; they are never allowed against asserted and established facts. When these appear, presumptions disappear." *Lincoln v. French,* 105 U. S. 614; Thayer's Treatise on Evidence, 346.

Such presumptions are a rule of convenience like the one "requiring the party who relies on a license to show it." *Moore v. New York, N. H. & H. R. R. Co.,* (Mass.) 53 N. E. 816. Suppose, on prosecution, the State made direct proof that defendant had no license, would it still have the presumption which rests on the thought that it could not obtain such direct evidence? Suppose a claim that one absent for seven years or more was dead, and direct evidence

on whether he was, would the presumption of death be added to such evidence?

### 5-c

When it comes to the effect of the existence of direct evidence upon a presumption, no sound reasoning can draw a distinction between the presumption of love of life and the presumption that a particular carrier injured a shipment; and the rule as to such effect has never been limited to the first presumption. So it has been held that, when there is substantial evidence that delay alleged did not occur on the line of the carrier sued, it is error to let the jury have the presumption that the delay in the shipment was caused by the negligence of the terminal carrier. *Gulf, C. & S. F. R. Co. v. Brackett,* (Tex.) 162 S. W. 1191. *Swetland v. Boston & A. R. Co.,* 102 Mass. 276, decides that there was no case for the jury against the terminal carrier, because there was as much evidence that some earlier carrier caused apples to freeze in interstate shipment as there was that the last carrier, the one sued, had caused such damage. 6 Cyc. 491, note, construes the *Swetland* case, and that of *Louisville & N. R. Co. v. Tennessee Brewing Co.,* (Tenn.) 36 S. W. 392, to hold that, if it appears that presumably injury resulted before the goods reached the last carrier, it will not be held liable in the absence of direct evidence; and the same authority, in its notes and annotations (points 38 and 39), points out that, if the shipper accompanies the shipment, the presumption does not apply.

It seems manifest that the *Glassman* case had no occasion to decide the point in this case. That which it is unnecessary to decide is not *decided* though something is said that purports to decide it. If a cause can be affirmed without passing upon an asserted Federal right, such right will not be inquired into (*New Orleans & N. E. R. Co. v. National Rice Milling Co.,* 34 Sup. Ct. Rep. 726), nor does

it matter that the dictum is invited. The test of *obiter* is not how it was induced. That a decision is needless is not changed by showing how it was invited. It does not matter that, in *Glassman's* case, there was an assignment which assailed an instruction for ruling that the presumption was not affected. On appeal, it should not have been passed upon, beyond saying that the charge was erroneous because it injected whether a presumption had or had not been changed, when, because of direct evidence, it was immaterial whether or not it had been changed.

*Elliott v. Chicago, M. & St. P. R. Co.*, (S. D.) 150 N. W. 777, at 778, is dictum as to presumptions, because its argument is addressed to the proposition that the shipper may sue either carrier, "if he *knows* which one among a number of carriers caused the injury." *Railway v. Harrington*, supra, is in similar case. It says that *"direct evidence* appears to show that the injury complained of occurred while the property was in the hands of this carrier." Where the plaintiff "knows" which of several carriers did the damage, or if there is direct evidence which one did, there is no room for indulging in presumptions on which one did, and all said under such conditions concerning the law of presumptions is, as seen, dictum, pure and simple.

I am firmly persuaded that we should reverse on the ground that the presumption against the last carrier will not avail to prove the case of plaintiff, because the Federal law has substituted for such presumption one that the initial carrier caused the damage.

WEAVER, J., concurs in this dissent.